THE CITY OF HOUSTON v. MARY A. BRYAN.

No. 118.

1. **City Drainage—Liability for Overflow.** — The city was not originally bound to furnish ditches or sewers for the purpose of draining plaintiff's property; but when it collected water from other territory and concentrated it in the ditch which it had dug along the street in front of plaintiff's property, it was bound to provide sufficient outlet for it, so that it would not be forced upon plaintiff's land in larger quantities than would have flowed over it without such act.

2. **Charge Approved.**—If the jury believe from the evidence that by means of the ditch in question, surface water that would naturally have overflowed

elsewhere was diverted in large quantities from its natural outlet and carried into the ditch, then if the evidence further shows that the defendant permitted the ditch to become and remain insufficient to carry off the water so collected in it, and that by reason thereof large quantities of water, diverted from its natural outlet, were thrown from said ditch upon the plaintiff's premises, the plaintiff is entitled to recover such damages, if any, as resulted to her therefrom.

3. **Defective Charge.**—See opinion for charge asked by defendant held to be defective.

4. **Verdict not Excessive.**—The testimony of the plaintiff and the doctor taken together established, as well as can be required, the fact that plaintiff was made sick, and that her health was gradually undermined, and that she was exposed to bad odors and discomforts, and to much inconvenience resulting from the flooding of her house. and that her bills incurred to one doctor alone amounted in one year to $200 or $300; and as we understand his evidence he attributes these bills to sickness resulting from the causes assigned; therefore a verdict for $675 was not excessive.

ERROR from Harris.    Tried below before Hon. JAMES MASTERSON.

*H. F. Ring*, for plaintiff in error.—In view of the evidence of the case and the ambiguous and inconsistent charges given by the court, the court should have submitted special charge requested by the defendant, or one embracing the issue suggested by the same.    2 Dill. on Mun. Corp., sec. 1046, note; Mills v. Brooklyn, 32 N. Y., 493.

*Looscan & Livermore*, for defendant in error.—1.   The portions of the charge given by the court complained of by the plaintiff in error are correct, as they state the law applicable to the facts before the jury.   Gross v. Lampasas, 74 Texas, 195; Hitchins Bros. v. Mayor, 20 Am. and Eng. Corp. Cases, 400; Rowe v. Portsmouth, 56 N. H., 291; City of Denver, 9 Col., 554; 20 Am. and Eng. Corp. Cases, 411; Bates v. Westborough, 151 Mass., 174; Seifert v. Brooklyn, 14 Am. and Eng. Corp. Cases, 440; Eufaula v. Simmons, 86 Ala., 515; 2 Dill. on Mun. Corp., secs. 1051, 1051a, 1049.

2.   The court did not err in refusing to give the special charge asked by defendant.  Hitchins v. Frostburg, 20 Am. and Eng. Corp. Cases, 401.

3.   The court did not err in refusing to grant defendant's motion for a new trial, because the evidence was sufficient to sustain the verdict, which was not excessive.   Railway v. Johnson, 65 Texas, 389; Railway v. Helsley, 62 Texas, 593; Railway v. Harrington, 62 Texas, 597; Eufaula v. Simmons, 86 Ala., 515.

WILLIAMS, ASSOCIATE JUSTICE.—Defendant in error, Mrs. Bryan, who was plaintiff below, owned a homestead situated at the corner of Main and Calhoun Streets in the city of Houston.   When her homestead was improved in 1869, there was a ditch, known as "the city ditch," kept

open by the city, which ran along Calhoun Street, passing by her property, and which afforded sufficient drainage for that and the neighboring lands.

Subsequently the city dug ditches along other streets above her property, which opened into the city ditch at right angles, thus conducting into it a volume of water larger than had formerly passed through it; too large, indeed, for its capacity as it was originally made. Weeds and rubbish were allowed to accumulate in the city ditch in the neighborhood of Mrs. Bryan's property, and to gradually and materially diminish its depth, thus rendering it still less sufficient to carry off the water which concentrated there when there was copious rainfalls. The consequence was, that the water was impeded in the passage opposite to her house, backed up to the Main Street crossing, and there overflowed, running into her yard and house and damaging her.

It sufficiently appears from the evidence, that by means of the other ditches which were opened into the city ditch, water was collected and emptied into it which would not otherwise have flowed through it, but would have passed off in other directions; and that because of this increase and the filling up of the city ditch, plaintiff's property was overflowed at every rain of the duration of an hour or two. This overflowing of plaintiff's property began six or seven years before the trial, and seems to have increased in magnitude up to the time this suit was brought.

In the trial below, defendant having pleaded the statute of limitations, plaintiff was restricted in her recovery to such damages as she had sustained within two years next preceding the institution of this suit. She introduced evidence tending to show, that within that time, by the operation of the water which flowed into her house, a floor had rotted out which it cost her $120 or $125 to replace; that she and her young daughters had been made ill with chills and fever for about half the time, and had incurred from $200 to $300 as doctor's bills; that bad odors had been generated, and that her house was rendered damp and uncomfortable for a large part of the time. There was evidence of much further damage, such as the destruction of garden, shrubbery, flowers, etc., and the rotting of other floors, but the time when it occurred and the value of the things destroyed or injured are not shown.

In view of the verdict, we find the foregoing facts to have been established. Quite a number of witnesses gave it as their opinion, that the overflows of plaintiff's premises were not increased, but rather diminished by the ditch, and that her property was not injured but benefited by it.

But facts to which other witnesses testified, if true, rendered it apparent that those opinions were based upon a partial conception of the question, and the jury was warranted in disregarding them.

The city was not originally bound to furnish ditches or sewers for the purpose of draining plaintiff's property of the surface water which natu-

rally passed over it, and it was not therefore bound to keep open the ditch which it had dug, so long as it did not by its negligence increase or divert the flow of such surface water to plaintiff's injury.

But when it collected water from other territory and concentrated it in this ditch, it was bound to provide sufficient outlet for it, so that it would not be forced upon plaintiff's land in larger quantities than would have flowed over it without such act. The rule of law applicable in such cases is thus stated by Judge Dillon: "There will be liability [of a municipal corporation] if the direct effect of the work, particularly if it be a sewer or drain, is to collect an increased body of water and to precipitate it on the adjoining private property to its injury." And further: "There is municipal liability where the property of private persons is flooded, either directly or by water being set back, when this is the result of the negligent execution of the plan adopted for the construction of gutters, drains, culverts, or sewers, or of the negligent failure to keep the same in repair and free from obstruction; and this whether the lots are below the grade of the street or not." Dill. on Mun. Corp., 1051; see, also, Gross v. Lampasas, 74 Texas, 195.

It follows from this that the city was liable upon the facts above stated.

The court gave the jury the following instructions, of which numbers 1 and 3 are assigned as error:

"1. As to any injury resulting to plaintiff from overflow of city ditch, if any, you will find for plaintiff, if from the evidence you find such overflow was occasioned by reason of negligence in the city authorities charged with that duty in not maintaing such ditch in proper repair and condition.

"2. If you find that plaintiff's property was overflowed from Main Street, or from surface water flowing on it or on adjacent property not occasioned from said city ditch, then your verdict should be for defendant.

"3. If you find from the evidence that plaintiff's property has been damaged from overflow of the city ditch, if such overflow was occasioned by reason of bad condition of said city ditch, by reason of weeds, etc., filling up, then you must confine your inquiries to such injuries received within two years next before filing this suit. And you will exclude any or all injuries or damages to plaintiff not occurring within two years next before September, 1890, for all such damages are barred by limitations and can not be allowed for."

These instructions are complained of as having been "calculated to impress the jury with the idea that it was the duty of the city authorities to maintain the ditch in such condition that its capacity would be sufficient to prevent an overflow of plaintiff's premises from surface water, regardless of the question as to whether the ditch in its then condition was injurious to plaintiff or not."

The general charge was certainly quite vague and indefinite, and did not inform the jury as to the conditions upon which the liability of the city would depend. We think it is defective rather than positively erroneous.

At the request of plaintiff the following instruction was given: "If the jury believe from the evidence, that by means of the ditch in question surface water that would naturally have overflowed elsewhere was diverted in large quantities from its natural outlet and carried into the ditch, then if the evidence further shows that the defendant permitted the ditch to become and remain insufficient to carry off the water so collected in it, and that by reason thereof large quantities of water, diverted from its natural outlet, were thrown from said ditch upon the plaintiff's premises, the plaintiff is entitled to recover such damages, if any, as resulted to her therefrom under the rules elsewhere given, and the jury shall so find."

And the court at defendant's request charged as follows: "Defendant can not be held liable for a mere neglect to provide ditches of sufficient capacity to properly drain the premises of the plaintiff; and if the overflows, if any, of the plaintiff's premises were not caused by any direct act or omission on the part of defendant, or if said premises would have overflowed to as great an extent without the acts of the defendant complained of, then you will find for the defendant."

The rules upon which they were to rest their verdict were thus clearly given to the jury, and with the aid of these special charges there was no probability of a misunderstanding of the main charge.

The other charge asked by defendant, so far as it is correct, was involved in that which was given. The effect upon the case of the two charges would be the same, except that the one which was not given was incorrect in one particular. It is as follows:

"If you believe from the evidence, that notwithstanding the negligence, if any, of the city in failing to keep the ditch on Calhoun Street in proper repair and of sufficient capacity, the premises of the plaintiff have nevertheless been as well drained for the last two years as the same would have been had no ditch been there, you will find for the defendant."

It might be true that the premises have been as well drained for the last two years as the same would have been had not the city ditch been there, consistently with defendant's liability. The other ditches had been opened into it more than two years before the trial, and while it may be conceded that this ditch, defective as it was, helped to carry off the water thus collected, and thereby drained the land as well or better than it would have been drained had it not been there, it by no means follows that it was sufficient to conduct away the increased flow which had been introduced into it since its original construction. Unless it was sufficient to do that, defendant was liable.

The fourth assignment is too general. The fifth is, that the verdict is excessive.

The verdict can not be sustained upon the proof of the killing of fruit trees, gardens, shrubbery, flowers, etc., because no statement was made of their value. The same is true as to the rotting of floors. The plaintiff could not recover the full cost of putting in a new floor, because the value of the old one was not entirely destroyed. The testimony of the plaintiff and of the doctor, taken together, did, however, establish as well as can be required the facts, that plaintiff was made sick, that her health was gradually undermined, and that she was exposed to bad odors and dis- comforts and to much inconvenience, resulting from the flooding of her house, and that her bills incurred to Dr. Burroughs alone amounted in one year to $200 or $300. As we understand his evidence, he attributes these bills to the sickness resulting from the causes assigned. In view of these facts, we can not say that the jury was not warranted in finding a verdict for plaintiff, nor that the amount they awarded, $675, is ex- cessive.

The judgment is affirmed.

*Affirmed.*

Delivered March 23, 1893.