NORMAN & SCHAEN, INC., et al., Appellants,

v.

CITY OF DALLAS, Appellee.

No. 18815.

Court of Civil Appeals of Texas, Dallas.

April 22, 1976.

Rehearing Denied May 20, 1976.

Thomas A. Blakeley, Jr., Grady, Johnson, Smith & Blakeley, Dallas, for appellants.

Alex Bickley, City Atty., Carroll R. Graham, Asst. City Atty., Dallas, for appellee.

GUITTARD, Justice.

In this action for water damage to the contents of a building, the principal question is whether the City had a duty to avoid the damage by constructing a larger storm drain than one constructed more than forty years before the floods in question. We hold that the City had no such duty, and, consequently, that the trial court properly refused to submit special issues concerning the City's alleged negligence in maintaining a drain with the insufficient capacity to accommodate the water expected to flow through it. We also hold that the court properly excluded testimony concerning inadequacy of the drain.

The suit was brought by Norman & Schaen, Inc. and Regina Manufacturing Company, occupants of a building at Second Avenue and Elihu Street in South Dallas near Fair Park. In the summer of 1973, Norman & Schaen was a wholesaler of rugs, and Regina was a manufacturer of bedspreads and bedroom furnishings. Both companies used a warehouse area in the building for storage. On June 3, 1963, after a heavy rain, water rose on Elihu Street and adjacent property so as to inundate the warehouse area to a level of eighteen or nineteen inches above the floor. Materials and merchandise stored on pallets four to six inches high were damaged. After the flood plaintiffs undertook to erect platforms so as to raise the materials and merchandise two to six inches above the previous water level. On July 7 of the same year, before this work was completed, another flood occurred in which water rose to twenty-eight inches above the floor. Additional damage was sustained in the second flood by Regina, but not by Norman & Schaen.

The principal drainage facility in the area was a storm sewer constructed by the City in 1932. This sewer followed the general course of a small creek, which was filled in when the sewer was installed. The creek, and the sewer which replaced it, crossed the lot on which the building in question was later constructed. In fact, the building was located directly over the storm sewer and old creekbed.

The sewer was constructed according to plans which designated it as sufficient to accommodate a five-year flood, that is to say, a flood of a magnitude that would be expected to occur with an average frequency of not more than once in five years. It was not designed to accommodate larger floods that might be expected to occur less frequently. Although the interval between the two floods in question was less than five weeks, they were both of greater magnitude than would be expected to occur once in five years.

Plaintiffs allege three grounds of negligence on the part of the City: (1) failing to maintain a storm drain of adequate size, (2) failing to install adequate inlets to the storm drain at Elihu Street, and (3) allowing the inlets to become obstructed by debris. The trial court refused to receive evidence concerning inadequacy of the drain or the inlets. The court submitted issues concerning obstruction of the inlets, but the jury failed to find that the inlets were so obstructed at the time of either flood. Judgment on the verdict was rendered for the City, and both plaintiffs appeal.

█ Plaintiffs' first twenty-eight points of error relate to the question of whether the City may be held responsible for damages resulting from constructing or maintaining inadequate drains or inlets. We hold that the City has no legal responsibili-

ty in this respect. The basic rule is that the construction of sewers and drains is within the discretion of the governing body of the city so long as the city does nothing to increase the flow of surface waters across the land in question. *City of Houston v. Bryan*, 2 Tex.Civ.App. 553, 22 S.W. 231 (1893). *See, City of Dallas v. Winans*, 262 S.W.2d 256 (Tex.Civ.App.—Dallas, 1953, no writ); *Johnston v. Dist. of Columbia*, 118 U.S. 19, 6 S.Ct. 923, 30 L.Ed. 75 (1886). Since partial protection against floods is better than none at all, if the city undertakes to provide drainage, it has no duty to provide facilities adequate for all floods that may reasonably be anticipated. The existence of such liability would tend to deter the city from providing even partial relief from flooding. The extent of the protection to be provided is within the discretion of the governing body, which must weigh the needs of the entire community and allocate available resources so as best to serve the interests of all its citizens. To award damages in a private action for insufficient drainage of a particular tract of land would be to permit use of the judicial process to supervise the planning and construction of public improvements. Municipal fiscal policy, instead of being set for the city as a whole by the elected representatives of the people, would be subject to piecemeal review and revision by courts in separate actions concerned primarily with the interests of one or more individual landowners and their lessees. *Hession v. Mayor of Wilmington*, 1 Marv. 122, 40 A. 749, 752–53 (Del.Supr.Ct.1893), and *cf. Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 994 (1949).

These considerations are conclusive against the City's liability for negligence in the present case. Plaintiffs did not establish that the damage complained of was caused by diversion of more water across the land than would have flowed across it if no storm sewer had been constructed. They attempt to supply this essential proof by asserting that when the concrete sewer was installed, the circuitous route followed by the old creek was straightened and thus water from upstream was concentrated

more rapidly in the area of Elihu Street. They also assert that if the natural drainage had been undisturbed the excess water would have simply flowed down the old creek rather than into the building which they occupied. These assertions are not supported by the record. The storm sewer in question did not end at Elihu Street, but continued for more than a mile and emptied into an open channel. Increasing the rate of flow would carry the water away more quickly, and thus reduce rather than increase the level of the water at the height of the flood. Presumably, the purpose of the concrete sewer was to reduce flooding by providing increased drainage capacity as compared to that of the old creek, and plaintiffs offered no evidence to show that the sewer did not provide at least partial protection. Neither did plaintiffs offer proof that the capacity of the sewer was less than that of the creek.

In fact, the record indicates that the construction of the building in question in its position across the old creek bed as well as over the storm sewer would not have been feasible if the sewer had not been constructed. That building blocks the emergency overflow system contemplated by the 1932 drainage plan and forms a dam which obstructed the drainage of waters away from Elihu Street on the two occasions in question. Although the City granted a permit for the construction of a building at that location, plaintiffs do not allege that action as a ground of liability. They contend rather that an issue should have been submitted to the jury inquiring whether the City maintained the storm sewer in question "with insufficient capacity to fairly accomodate water reasonably expected to flow through it."

■ The City acknowledges that the 1932 drain is not sufficient to accommodate all the water that may reasonably be expected to accumulate in the drainage area. It concedes that this sewer was designed only to protect against floods that would be expected to occur, on an average, as frequently as once in five years, not floods of greater magnitude that might be anticipated at

longer intervals. But, the City insists that it has no legal duty to provide protection against more severe floods. We agree for the reasons already stated. Plaintiffs are in no position to complain that the 1932 sewer afforded partial rather than complete protection against anticipated floods. Consequently, the trial court correctly excluded evidence offered to show the inadequacy of the storm drain in question and properly refused to submit issues inquiring whether the City was negligent in constructing a storm sewer of insufficient capacity.

Similar considerations govern plaintiffs' contention concerning adequacy of the inlets to the storm sewer on Elihu Street. In the absence of proof that construction of the sewer diverted more water across the land in question and thus presented a greater hazard of damage from flooding, no liability exists for inadequacy of the inlets. Moreover, the present record fails to show any causal relation between the size of the inlets and the damage sustained. The City presented evidence tending to show that the damage complained of would not have been reduced by larger inlets on Elihu Street because on both occasions, at the height of the flood, the storm sewer was filled to capacity by water from upstream that prevented water from flowing into the drain through the inlets on Elihu Street. Thus, larger inlets would not have reduced the high-water level. Although there is testimony that the water might have drained away sooner if larger inlets had been provided on Elihu Street, the City's evidence also indicates that the damage was done when the water flowed into the building at the height of the flood, and that no additional damage occurred as a result of the continued high water on Elihu Street. This evidence may not have been conclusive, but plaintiffs failed to present any evidence tending to show that larger inlets at Elihu Street would have avoided any of the damage in question. Consequently, the trial court properly refused to submit these issues to the jury.

For the reasons stated we overrule plaintiffs' first twenty-eight points and we do not reach the other points of error presented.

Affirmed.