



# OPINION

No. 04-09-00289-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

Emeterio and Rosa Maria **DE MIGUEL**,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 304,367
Honorable H. Paul Canales, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed: February 3, 2010

REVERSED AND RENDERED

        This is an accelerated appeal from the trial court's denial of the City of San Antonio's ("the

City") plea to the jurisdiction. We reverse and render a judgment dismissing appellees' nuisance

claim against the City.

**BACKGROUND**

In September 1965, the City's Public Works Department approved Street and Drainage Plans ("Plans") for the construction of the North Star Hills Subdivision Unit-5. Pursuant to the Plans, a concrete-lined open drainage channel—constructed by an outside developer—directs water flow from two northern areas of the subdivision onto Tara Drive, where the water flow combines with drainage from Tara Drive and discharges it onto Lorene Lane. The Plans instructed the developer to grade the street and properties at the end of Tara Drive in order to direct the drainage of water to Lorene Lane. Specifically, the Plans instructed the developer to fill in Lot 8 to a minimum of one foot above the top of the curb in order to contain the drainage within the right-of-way. This did not happen.

Appellees Emeterio and Rosa Maria De Miguel ("the plaintiffs") own and reside at 502 Tara Drive—the tract formerly known as Lot 8. On September 7, 1989, the plaintiffs sued the City for property damage to their residence. The lawsuit alleged the City "constructed a drainage facility" near the plaintiffs' residence that diverted surface water onto their property during rainfall. After a bench trial, the trial court rendered judgment against the City and awarded the plaintiffs $25,000 in damages, which the City paid to plaintiffs.

On July 13, 2005, the plaintiffs filed the underlying lawsuit against the City for inverse condemnation and nuisance, alleging heavy rains divert flood waters onto their property by way of a City-owned storm water drainage channel. In response, on May 30, 2006, the City filed its original plea to the jurisdiction and traditional and no evidence motions for summary judgment. On September 29, 2006, the City filed its supplemental plea to the jurisdiction and traditional and no evidence motions for summary judgment. In its supplemental motions for summary judgment the

City argued, among other things, that the plaintiffs' claims were barred by res judicata and the statute of limitations. On May 30, 2007, the trial court held a hearing on the motions and subsequently ruled "that [the City's] Motion as to Plaintiffs' suit for Inverse Condemnation under Article 1 § 17 of the Texas Constitution is meritorious and should in all things be granted . . . ." The trial court did not rule on the City's plea to the jurisdiction.

On May 7, 2009, the City filed another plea to the jurisdiction on the nuisance claim alleging (1) the trial court's granting of its motion for summary judgment as to the plaintiffs' inverse condemnation claim is a conclusion "that the City lacked the requisite intent to be held liable under Article I, § 17 of the Texas Constitution" and (2) the plaintiffs did not allege the City took any intentional act to damage their property. The plaintiffs did not file a response, but at the hearing on the City's plea, the plaintiffs relied on their response to the City's 2006 plea to the jurisdiction and on their own previously filed motion for partial summary judgment. In those pleadings, the plaintiffs alleged the City "knows that the maintenance of its drainage facility, taken together with recurrent heavy rain, is causing identifiable harm to the property . . . ." The trial court held a hearing on the plea and subsequently denied it. This accelerated appeal by the City ensued.

## SOVEREIGN IMMUNITY

Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the governmental entity has been sued unless it consents to suit and, thus, sovereign immunity is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-26 (Tex. 2004). In its sole issue on appeal, the City argues the trial court does not have subject-matter jurisdiction over the plaintiffs' nuisance claim because (1) governmental

immunity has not clearly been waived by statute and (2) the nuisance does not rise to the level of a constitutional taking.

## NUISANCE RISING TO LEVEL OF CONSTITUTIONAL TAKING

Nuisance liability arises only when governmental immunity is clearly and unambiguously waived. *City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004). In some cases, a city may be held liable for a non-negligent nuisance—that is, one that rises to the level of a constitutional taking. *Id.*; *see Cozby v. City of Waco*, 110 S.W.3d 32, 40 (Tex. App.—Waco 2002, no pet.). In others, the Texas Tort Claims Act may waive immunity from nuisance claims. *Miranda*, 133 S.W.3d at 225; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2005). Here, the plaintiffs do not assert there exists any statutory waiver of immunity and we have found none; therefore, we conclude there is no statutory waiver. Consequently, the City can only be liable for a non-negligent nuisance rising to the level of a constitutional taking. *See Jennings*, 142 S.W.3d at 312.

Article I, section 17 of the Texas Constitution—the "takings" clause—provides "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17 (amended 2009). At the heart of the takings clause lies the premise that the government should not "forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Steele v. City of Houston*, 603 S.W.2d 786, 789 (Tex. 1980) (quoting *Armstrong v. United States*, 80 S.Ct. 1563, 1569 (1960)). To properly assert a non-negligent nuisance claim against a governmental entity, a party must plead and show the following elements: (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that

resulted in the taking, damaging, or destruction of the party's property; (3) for public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). Here, the City's plea to the jurisdiction challenged only the first element; therefore, we limit our analysis to whether a fact issue exists on the question of whether the City intentionally performed an act that rises to the level of a taking.

The City's first argument is that the trial court, by dismissing the plaintiffs' inverse condemnation claim, concluded "the City lacked the requisite intent to be held liable under Article I, § 17 of the Texas Constitution." We disagree. The City based its motion for summary judgment on a variety of grounds, including res judicata arising out of the 1989 lawsuit and that the ten-year statute of limitations for inverse condemnation damages claims had run. The trial court did not state the grounds on which it rendered summary judgment in favor of the City; therefore, the trial court's judgment could have been based on res judicata or limitations, and not on any determination regarding the City's intent.

Next, the City argues the plaintiffs did not plead or show the City knew a specific act was causing identifiable harm or knew that specific property damage was substantially certain to result from an authorized government action. *See Jennings*, 142 S.W.3d at 314 (holding that, when asserting constitutional taking claim, pleader must show governmental entity knows specific act is causing identifiable harm or knows specific property damage is substantially certain to result from authorized government). We begin our analysis of this argument by looking to the plaintiffs' allegations contained in their petition, which are as follows:

> This [flood control or storm sewer] facility is designed and built so as to collect and divert surface waters from several streets in the neighborhood. The surface water collection area is at a higher elevation than Plaintiffs' home. Unfortunately the facility

is designed and constructed in such a way that it collects surface water during heavy rains and diverts that surface water directly onto the property of the Plaintiffs. . . .

Since on or about January 1991 the City has had actual knowledge that the damage to Plaintiffs' home is occurring. On January 10, 1991 City Ordinance No. 72914 was passed to compensate the Plaintiffs for the damages sustained by the Plaintiffs up to September 1990. . . . However, the City has done nothing to correct the drainage, and the intermittent flooding has continued.

. . .

Nuisance. The design and maintenance of the City's flood control or storm sewer facility is such that it creates a nuisance which nuisance has damaged and destroyed the Plaintiffs' property.

We construe the plaintiffs' pleadings and arguments liberally to assert the underlying government action that resulted in the taking was the City's failure to correct the drainage problem. The plaintiffs point to a January 1991 City memo as evidence the City knew damage was substantially certain to follow from the continued operation of the drainage facility during heavy rains. The memo states in part:

An on-site inspection by Drainage personnel confirmed that two existing 36" pipes discharge 119 cubic feet of water per second into a concrete channel which empties directly into Tara Drive. During heavy rains Tara Drive cannot contain the water discharged; it jumps the curb and flows directly into the De Miguel property. Even a new street constructed to current design standards (which Tara Drive is not) could handle only 65 cubic feet per second, or about 58 percent of the water delivered at this point. The only permanent solution to this drainage problem would be construction of proposed but presently unfunded drainage project 74X, Lorene Drive, at a projected cost of $995,000.

It appears the plaintiffs argue that the City's acknowledgment that the drainage problem can only be corrected by the construction of "drainage project 74X" and its failure to fund and construct "drainage project 74X" demonstrates the City's intent to cause flooding on their property, resulting in a taking. We disagree.

A person's property may be "taken, damaged or destroyed . . . if an injury results from either the construction of public works or their subsequent maintenance and operation." *See City of Tyler v. Likes*, 962 S.W.2d 489, 504-05 (Tex. 1997) (internal quotations omitted). However, a city has no duty to provide drainage or facilities adequate for all floods that may occur or reasonably be anticipated as long as the city does nothing to increase the flow of surface water across the land in question. *The City of Borger v. Garcia*, 290 S.W.3d 325, 330 (Tex. App.—Amarillo 2009, pet. filed); *Norman & Schaen, Inc. v. City of Dallas*, 536 S.W.2d 428, 429-30 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). "The existence of such liability would tend to deter the city from providing even partial relief from flooding." *Norman & Schaen, Inc.*, 536 S.W.2d at 430. In determining the extent of the protection to be provided, a city "must weigh the needs of the entire community and allocate available resources so as best to serve the interests of all its citizens." *Id.* Here, the plaintiffs point to no new action taken by the City after the conclusion of the 1989 lawsuit that resulted in an increased flow of surface water across their property.

The plaintiffs' 1989 suit was based on negligence, and the City did not dispute its liability.[1] After the 1989 lawsuit, the plaintiffs point to no new action on the City's part that caused their damages; instead, they point to the City's failure to fund a new project. However, we conclude the City's decision to not fund the construction of "drainage project 74X" does not convert any negligence on the City's part into an intentional taking by the City. Mere negligence that eventually contributes to the destruction of property is not a taking. *Likes*, 962 S.W.2d at 505. Therefore, the

---

[1] The 1991 City memo stated: "There was no basis for dispute that the directed flows of runoff drainage waters caused damage to the foundation and other structural parts fo the De Miguel residence. Faced with certainty on the issue of liability, a jury was waived and the damage issue submitted [to the] court for determination."

City's continued maintenance of the facility is, at most, no more now than it was in 1989: negligence.

Also, a similar argument was rejected by the Texas Supreme Court in *City of San Antonio v. Pollock*, wherein the Pollocks argued the city's knowledge that subsidence, ponding, and gas generation and migration are inherent in the operation of a landfill was sufficient to show the city knew its operation of the landfill was substantially certain to damage their property. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009). The Court held that the "negligent failure to prevent landfill gas migration in this case is no evidence that [the city] intended to damage the Pollocks' property." *Id.*

## CONCLUSION

After examining the relevant evidence and construing the plaintiffs' allegations in their favor, we conclude the plaintiffs did not present a claim on which governmental immunity is waived. Therefore, we reverse the trial court's order and render judgment dismissing the plaintiffs' nuisance claim against the City for lack of jurisdiction.

Sandee Bryan Marion, Justice