

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00292-CV

**TEXAS DEPARTMENT OF TRANSPORTATION**,
Appellant

v.

**C-5 HOLDINGS, LLC** and Stone Oak Storage Partners, Ltd.,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-23191
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: May 25, 2022

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

In this interlocutory appeal, the Texas Department of Transportation ("TxDOT")

challenges the trial court's order denying its motion for summary judgment on sovereign immunity

grounds. We affirm in part, reverse and render in part, and remand the case to the trial court for

further proceedings consistent with this opinion.

### BACKGROUND

C-5 Holdings, LLC ("C-5") and Stone Oak Storage Partners, Ltd. ("Stone Oak Storage")

(collectively, the "plaintiffs") own undeveloped commercial property on U.S. Highway 281 north

of Stone Oak Parkway ("U.S. 281"). The plaintiffs' first development was a storage facility called The Keep Storage-Stone Oak ("Keep Storage"). That facility lies at the center of this dispute.

Construction began on Keep Storage in October 2016. Construction plans included pad sites for other businesses and three driveways to connect the plaintiffs' property to U.S. 281; one of the driveways would connect Keep Storage to U.S. 281. Before the plaintiffs completed the driveways, TxDOT began construction on U.S. 281 along the plaintiffs' property.

Webber, L.L.C. ("Webber"), the contractor for TxDOT, stockpiled dirt needed for the project and for other construction along U.S. 281 in front of the plaintiffs' property. The plaintiffs described the stockpile as a massive dirt pile, 50 feet high and 1400 feet long. The dirt pile prevented the plaintiffs from completing the driveway to connect Keep Storage to U.S. 281 and was so big that drivers could not see Keep Storage from U.S. 281.

Rather than accessing Keep Storage via the 322-foot planned driveway, the dirt pile required patrons to drive over a mile south on U.S. 281, then west on Stone Oak Parkway, then north along the parking lot of a restaurant to a private roadway leading to Keep Storage.

The plaintiffs sued Webber and TxDOT for inverse condemnation, nuisance, negligence, and promissory estoppel. TxDOT filed a motion for summary judgment arguing it had sovereign immunity on plaintiffs' inverse condemnation, nuisance, and promissory estoppel claims.

TxDOT filed objections to the plaintiffs' summary judgment evidence. The trial court overruled TxDOT's objections and denied the motion for summary judgment without specifying a reason. TxDOT appealed.

**MOTION TO DISMISS**

After the trial court denied its motion for summary judgment, TxDOT filed a notice of appeal and characterized its appeal as a permissible interlocutory appeal. The plaintiffs filed a motion to dismiss the appeal arguing TxDOT seeks an impermissible interlocutory appeal and

requested we dismiss the appeal. Because TxDOT's motion for summary judgment constituted a plea to the jurisdiction for interlocutory appeal purposes, we deny the motion to dismiss this appeal. *See PHI, Inc. v. Texas Juv. Just. Dep't*, 593 S.W.3d 296, 301 n.1 (Tex. 2019) ("For purposes of appellate jurisdiction over interlocutory orders, the court of appeals had jurisdiction over the denial of the combined plea to the jurisdiction and motion for summary judgment, regardless of how the trial-court pleading was styled, because the substance of the pleading was to raise sovereign immunity, which implicates subject-matter jurisdiction."); *see also City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (citations omitted) ("A party may appeal an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit. This Court considers 'plea to the jurisdiction' not to refer to a 'particular procedural vehicle,' but rather to the substance of the issue raised."); *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) ("The [l]egislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used.").

### OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

In its fourth issue, TxDOT argues the trial court erred when it overruled TxDOT's objections to the plaintiffs' summary judgment evidence.

"We review a trial court's ruling on objections to summary judgment evidence for an abuse of discretion." *See E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 854 (Tex. App.—San Antonio 2017, no pet.) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). "A trial court abuses its discretion if its ruling is arbitrary or unreasonable or without reference to any guiding rules and principles." *E-Learning LLC*, 517 S.W.3d at 854. An abuse of discretion is not demonstrated "[m]erely because a trial court may decide a discretionary matter differently than the appellate court . . . ." *In re Est. of Denman*, 362 S.W.3d 134, 141 (Tex. App.—

San Antonio 2011, no pet.). We will uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling and will reverse a trial court for an erroneous evidentiary ruling only if the error probably caused the rendition of an improper judgment. *Malone*, 972 S.W.2d at 43.

TxDOT objected to William C. Stein's and Daniel Conway's statements that the plaintiffs were denied access to their property during TxDOT's highway construction. Stein is the plaintiffs' expert engineer and Conway is the plaintiffs' expert on real estate economics. TxDOT argued the statements conflicted with the plaintiffs' discovery admissions. In their admissions, the plaintiffs admitted "that customers and members of the public have been using the [private roadway] to access the subject property by driving from Stone Oak Parkway to Keep Storage . . . ." Although the plaintiffs had a way to access Keep Storage, the reasonableness of that access, and the availability of access via public roads, lie at the center of this dispute—not simply whether the plaintiffs found a way to access Keep Storage. The plaintiffs' admissions do not conflict with Stein or Conway's statements.

TxDOT also complains Stein's and Conway's statements—that the plaintiffs did not have access to their property—were conclusory because other evidence showed the plaintiffs could access their property by using the private roadway. Stein and Conway provided expert opinions supporting their conclusions about the reasonableness of access. The statements are not conclusory just because TxDOT may be able to dispute Stein's and Conway's assertions. The trial court's decision to overrule TxDOT's objections to these statements was not arbitrary or unreasonable. Accordingly, the trial court did not abuse its discretion when it overruled TxDOT's objections.

TxDOT also objected to Casey Ory Kalenkosky's declaration that the private roadway the plaintiffs used to access their property is not located on property owned by Stone Oak Storage. TxDOT claims the testimony is conclusory because it "was not supported by any actual facts." Kalenkosky was the "Project Manager" for the development between 2017 and 2018 and has

served as the "Director of Development" since 2018. Kalenkosky attested his statement regarding the private roadway was based on his own personal knowledge of the project and circumstances. While TxDOT may dispute Kalenkosky's assertion, the assertion—based on personal knowledge—is not conclusory. The trial court's decision to overrule TxDOT's objections to these statements was not arbitrary or unreasonable. Accordingly, the trial court did not abuse its discretion when it overruled TxDOT's objection.

TxDOT's fourth issue is overruled.

## STANDARD OF REVIEW

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018)*; see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (holding the standard of review for a plea to the jurisdiction mirrors that of a summary judgment). To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In reviewing a trial court's summary judgment ruling, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

## INVERSE CONDEMNATION CLAIM

In its first issue, TxDOT argues the trial court erred when it denied summary judgment on the plaintiffs' inverse condemnation claim.

"Inverse condemnation is a cause of action against the government to recover the value of property that has been in fact taken, even though the government agency did not formally exercise the power of eminent domain or initiate condemnation proceedings." *State v. Momin Props., Inc.*,

409 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012)). Sovereign immunity generally protects the State from lawsuits for monetary damages, but it does not protect the State from an inverse condemnation claim brought under article I, section 17 of the Texas Constitution.[1] *See Momin Props.*, 409 S.W.3d at 6. Sovereign immunity "offers no shield against an inverse condemnation claim brought under article I, section 17 of the Texas Constitution, which waives immunity for the taking, damaging, or destruction of property for public use and authorizes compensation for such destruction." *State v. Bhalesha*, 273 S.W.3d 694, 697 (Tex. App.—Houston [14th Dist.] 2008, no pet.). To recover on an inverse condemnation claim, a property owner must establish that (1) the State intentionally performed an act, (2) that resulted in the taking, damaging, or destruction of the property, (3) for public use. *Momin Props.*, 409 S.W.3d at 6.

A property owner can receive compensation for diminution in property value by proving a material and substantial impairment of access to the property. *Id.* A property owner can show a material and substantial impairment of access by proving "a temporary limited restriction of access caused by . . . negligent activity." *City of Austin v. Ave. Corp.*, 704 S.W.2d 11, 13 (Tex. 1986). A landowner may receive compensation when a public improvement destroys all reasonable access to the property. *State v. Heal*, 917 S.W.2d 6, 9–10 (Tex. 1996); *see also State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 174 (Tex. 2009) ("[D]iminished access to a landowner's remaining property is not compensable so long as reasonable access to the property remains."). "Even when an entire access point is closed, access to a business is not materially and substantially impaired if another access point on a *public* street remains unaffected." *Momin Props.*, 409 S.W.3d at 7 (emphasis added). Whether the State materially and substantially impaired access is a question of law, but

---

[1] The plaintiffs sued under article I, section 17 of the Texas Constitution.

fact questions about reasonable access preclude summary judgment. *See City of San Antonio v. Guidry*, 801 S.W.2d 142, 146 (Tex. App.—San Antonio 1990, no writ) ("Whether the placing of the obstructions in the street in this instance was reasonable or unreasonable was a question for the jury to determine under all the facts and circumstances of the case." (quoting *L–M–S Inc. v. Blackwell*, 233 S.W.2d 286 (Tex. 1950))); *see also Momin Props.*, 409 S.W.3d at 6.

In its summary judgment motion, TxDOT maintained the plaintiffs cannot prove a "material and substantial impairment" of access to their property because the plaintiffs had reasonable access to Keep Storage using a public road. To support its claim, TxDOT submitted expert opinions in the form of affidavits by Eduardo Reyes, a TxDOT engineer. Reyes opined that the plaintiffs had continual, uninterrupted access to their property since the beginning of the U.S. 281 construction project via Stone Oak Parkway. However, no public road connects Stone Oak Parkway to Keep Storage. *See Smith v. City of League City*, 338 S.W.3d 114, 125 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (explaining a "taking that leaves only a private roadway is significantly different from a taking that leaves a public roadway because, in the former, there is uncertainty concerning the complainant's ability and right to access his property via the private roadway, and this uncertainty could diminish the value of a complainant's property or cloud the title"). Other summary judgment evidence showed the only way to access Keep Storage was to use a public road—Stone Oak Parkway—*and a private road*.

Kalenkosky testified in his deposition that customers accessed Keep Storage from U.S. 281 by turning onto Stone Oak Parkway, then entering through a private roadway behind Olive Garden through a roundabout. According to Kalenkosky, a driver had to take a right turn outside a roundabout, go forward for fifty yards, go right, then left onto the private roadway behind Olive Garden, and lastly take a private roadway to Keep Storage.

Gregory L. Gibson[2] also testified in his deposition that a driver could access Keep Storage via a private roadway that runs from Stone Oak Parkway to Keep Storage. According to Gibson, a driver travelling south on U.S. 281 must exit Stone Oak Parkway, take a right on Stone Oak Parkway, turn right by the pad site near Longhorn Steakhouse, go back towards the Chase campus, veer right at the roundabout, go back behind Olive Garden, and then take the private roadway to Keep Storage. Although TxDOT's summary judgment evidence shows C-5 owns the property with the private roadway and plaintiff Stone Oak Storage Partners has an easement to use the private roadway, TxDOT relies on legal authority where access was achieved through public roads—not a combination of public roads and private roads. Reyes's attestations, and Kalenkosky's and Gibson's testimony in their depositions raise genuine issues of material facts on whether the plaintiffs and their customers had reasonable access to Keep Storage and whether the plaintiffs and their customers could access Keep Storage using public roads.

The summary judgment evidence also raised other genuine issues of material fact. For example, plaintiffs' expert-engineer Stein opined in his expert report that TxDOT and Webber failed to "make every effort to maintain access to [the plaintiffs] private property at all times during [construction] operations." Stein further opined TxDOT and Webber failed to "[p]rovide uninterrupted access to adjacent property" and failed to "keep from land-locking a property where such land locking is solely the result of action by TxDOT." According to Stein, "TxDOT and Webber did not maintain an acceptable standard of care . . . prescribed by . . . TxDOT manuals, specifications and other relevant public documents."

In response, TxDOT expert Reyes attested in his affidavit that Stein incorrectly assumed the plaintiffs' property was landlocked when the dirt pile was placed in front of the plaintiffs'

---

[2] Because the record only contains a portion of Gibson's testimony, it is unclear what title Gibson holds and how Gibson is familiar with the dispute. Neither party objected to Gibson's deposition testimony.

property. According to Reyes, the plaintiffs' property had continual, uninterrupted access since the inception of the U.S. 281 construction project by using Stone Oak Parkway—a public street adjacent to the plaintiffs' property—until the time the plaintiffs' southern driveway opened to U.S. 281 in 2020.

Plaintiffs' real estate economics expert Conway disagreed. Conway opined in his expert report that the placement of the dirt pile eliminated public access and visibility of the plaintiffs' properties beginning in October 2017 through the second quarter of 2020. According to Conway, the long pile of dirt had been in place almost 1,000 days, delayed lease and rental rates, and resulted in lost profits in excess of $1 million.

In contrast, John M. McInturff, a TxDOT expert traffic engineer, opined in his expert report that reasonable access had been continuously available to the plaintiffs' property since January 2017. This disputed evidence raises genuine issues of material fact on whether the plaintiffs' property was landlocked, whether TxDOT met its standard of care, whether the plaintiffs had continual and reasonable access to their property, and whether the plaintiffs experienced a temporary limited restriction of access caused by negligent activity.

In the following aerial photo—attached to the summary judgment evidence—the green line depicts the planned 322-foot drive from Keep Storage to U.S. 281; the blue line depicts the only route the plaintiffs could use after Webber placed the dirt pile in front of the plaintiffs' property. The private drive runs along the top blue line, beginning at the third bend in the blue line. Keep Storage is the facility above the green numbers.



The plaintiffs argued the situation depicted by the photo restricted their access for approximately two and a half years. By viewing the photo, the trial court could have determined genuine issues of material fact existed as to the reasonableness of access flowing from the placement of the dirt pile and whether the alleged restricted access was caused by TxDOT's negligent activity. Accordingly, TxDOT failed to show no genuine issue of material fact exists on the plaintiffs' inverse condemnation claim. Because the summary judgment evidence raised genuine issues of material fact, the trial court properly denied TxDOT's motion for summary judgment on plaintiffs' inverse condemnation claim.

TxDOT's first issue is overruled.

## NUISANCE

In their pleadings, the plaintiffs allege TxDOT created a nuisance when it built the pile of dirt in front of the plaintiffs' driveway that "substantially impaired [p]laintiffs' ability to use, enjoy[,] and/or market their properties . . . ." In its second issue, TxDOT argues sovereign immunity shields it from the plaintiffs' nuisance claim.

"Nuisance liability arises only when governmental immunity is clearly and unambiguously waived." *City of San Antonio v. De Miguel*, 311 S.W.3d 22, 25 (Tex. App.—San Antonio 2010, no pet.). A governmental entity may be liable for a non-negligent nuisance rising to the level of a constitutional taking. *Id.* ("In some cases, a [governmental entity] may be held liable for a non-negligent nuisance—that is, one that rises to the level of a constitutional taking."). Consequently, if the plaintiffs' inverse condemnation claim survives summary judgment, their nuisance claim may likewise survive because the government's alleged constitutional taking constitutes a waiver of its sovereign immunity from the nuisance claim. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004) ("[A] city may be held liable for a nuisance that rises to the level of a constitutional taking."); *see also Warwick Towers Council of Co-Owners ex rel St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 298 S.W.3d 436, 446 (Tex. App.—Houston [14th.] 2009, no pet.). "To properly assert a non-negligent nuisance claim against a governmental entity, a party must plead and show . . . (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damaging, or destruction of the party's property; (3) for public use." *De Miguel*, 311 S.W.3d at 26.

As mentioned above, genuine issues of material fact precluded summary judgment on the plaintiffs' inverse condemnation claim. *See Ahmed v. Metro. Transit Auth.*, 257 S.W.3d 29, 32 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating an inverse condemnation is a constitutional taking). Because plaintiffs have raised fact issues on whether TxDOT's actions are

a constitutional taking, TxDOT is not entitled to judgment as a matter of law based on sovereign immunity from plaintiffs' nuisance claim. Accordingly, the trial court properly denied TxDOT's motion for summary judgment on the plaintiffs' nuisance claim.

TxDOT's second issue is overruled.

### PROMISSORY ESTOPPEL

In their pleadings, the plaintiffs based their promissory estoppel claim on TxDOT's promise they would have three access driveways to U.S. 281 or its access road.[3] The plaintiffs constructed the three driveways at U.S. 281's then-current elevation but could not connect the driveways to U.S. 281 because Webber placed the dirt pile between the plaintiffs' property and U.S. 281. The plaintiffs complained about the dirt pile, including how the dirt pile prevented them from completing the driveways within the time allowed by the permits. TxDOT later issued a change order lowering the elevation of the U.S. 281 access road. The change required reconstruction and regrading of two of the plaintiffs' driveways. According to plaintiffs, TxDOT refused to reimburse the plaintiffs for the cost of reconstruction and regrading "claiming it is not obligated to do so because [the plaintiffs] allowed their permits to expire before tying [the driveways] into the access road."

As a general rule, a governmental unit exercising its governmental powers is not subject to estoppel. *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970). The Supreme Court of Texas, however, has recognized a narrow exception to the general rule as it applies to municipalities "where justice requires its application, and there is no interference with the exercise of . . . governmental functions." *Id.* at 836. The supreme court instructed the exception should be applied "with caution and only in exceptional cases where the circumstances clearly demand its

---

[3] TxDOT issued permits for the three driveways.

application to prevent manifest injustice." *Id.*; *see also Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 170 n.36 (Tex. 2013) (indicating the exception has only been applied twice). "For estoppel to apply against the government, two requirements must exist: (1) "the circumstances [must] clearly demand [estoppel's] application to prevent manifest injustice," and (2) no governmental function can be impaired." *A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 170 (emphasis omitted).

Since that time, Texas courts have declined to extend the exception beyond municipalities and the exception has never been applied to TxDOT. *See, e.g., S.W. ex rel. A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 422 (Tex. App.—Fort Worth 2014, no pet.) (explaining the exception does not apply to waive school district's immunity from promissory estoppel claim); *Kojo Wih Nkansah v. Univ. of Tex. at Arlington*, No. 02–10–00322–CV, 2011 WL 4916355, at *4 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied) (mem. op.) (declining to extend exception to state university); *Donna Indep. Sch. Dist. v. Gracia*, 286 S.W.3d 392, 396 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (stating the exception has never been applied to school districts).

"As to the first requirement, [the Texas Supreme Court has] applied estoppel to prevent manifest injustice if[] officials acted deliberately to induce a party to act in a way that benefitted the government." *A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 170 (alterations omitted). Here, the record does not show that TxDOT deliberately induced the plaintiffs to act in a way that benefitted TxDOT. Adhering to the supreme court's caution, we decline to apply the exception here. Accordingly, we hold the trial court erred when it denied summary judgment on the plaintiffs' promissory estoppel claim.

TxDOT's third issue is sustained.

**CONCLUSION**

The plaintiffs' motion to dismiss is denied. We affirm the portion of the trial court's order denying summary judgment on the plaintiffs' inverse condemnation and nuisance claims. We reverse the portion of the trial court's order denying summary judgment on plaintiffs' promissory estoppel claim and render judgment in favor of TxDOT on that claim. We remand the case to the trial court for further proceedings consistent with this opinion.

Irene Rios, Justice