# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00189-CV

**The City of Austin, Appellant**

**v.**

**GHI Investments, LLC f/k/a GHI Partners, LLC, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-11-002658, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, the City of Austin challenges the trial court's denial of its plea to the jurisdiction as to the claims for inverse condemnation and nuisance of GHI Investments, LLC f/k/a GHI Partners, LLC. GHI brought suit alleging that the City inversely condemned its property when it approved drainage designs that did not comply with its Design Criteria Manual (DCM) as part of two separate project site plans—a road widening and bike lane project on Pleasant Valley Road (the PV Project) and an HEB grocery store project (the HEB Project)—that resulted in flooding on GHI's property, constituting a taking.[1] In its plea to the jurisdiction, the City argued that GHI's pleadings did not support claims for inverse condemnation

---

[1] GHI asserted other claims against the City and claims against other parties that are not at issue in this appeal.

and nuisance and the City therefore retained its governmental immunity. For the reasons that follow, we affirm the trial court's order.

## FACTUAL BACKGROUND

GHI owns property in the City of Austin on the west side of Pleasant Valley Road adjacent to and downstream from an HEB grocery store. It appears to be undisputed that for some time there had been drainage problems in the area, causing water to pool on a recurrent basis and requiring street closures on nearby Elmont Drive, downstream from GHI's property. In approximately 2001, the City initiated the PV Project, a public works project for improvements to Pleasant Valley Road adjacent to GHI's property, including widening the road, adding a bike lane, and modifying the drainage system. An engineer assigned to the PV Project, Mitchell Stein, expressed concerns about the project, stating in emails that he may be "forced" to design improvements that are "recognized as not being in complete compliance with City standards." He called the project a "'band-aid' solution" that was "chosen as a way to get collected water off the roadway soon after a rainfall . . . which is in contrast to the existing situation in which water will stand in Elmont for days after moderately heavy rainfall" but was "recognized by all involved as being inadequate to solve the drainage problems in the area." He warned that the plan "changes the drainage pattern," decreases the conveyance of water across Pleasant Valley Road, and "may even make the ponding situation on the west side of Pleasant Valley worse," and he suggested a modified plan that would not make the situation worse.[2]

---

[2] Stein initially explained that the plan called for replacing five existing 24 inch culverts that crossed Elmont Drive with "a single 24" RCP and a 2' x 4' culvert crossing P[leasant] V[alley],"

2

Stein observed that a "large natural area" on the east side of Pleasant Valley Road that served as a "default detention area" would be eliminated by the drainage plan and "one of the intents of the 'band-aid solution' was to provide a means for collected water to drain off the road . . . so the hope was that, even if water is not allowed to flow to the 'default detention area' on the east side of PV, at least it may be collected and drained quickly enough from the west side of PV so that the adjacent property owners won't be affected any more than they currently are affected during a rain event." (Ellipsis in original.) A little more than a year after Stein first expressed his concerns, he emailed an "Update of Analysis of Drainage Needs at PV and Elmont," questioning how he could "demonstrate conveyance" of water for the PV Project in a system that could not even convey the existing water. He noted that the existing system did not convey existing water, that he could not demonstrate conveyance for the proposed system, and that "[s]uch a condition would arise on the west side of PV, in the culverts under Elmont."[3] A separate internal City email exchange indicates

resulting in a reduction in conveyance across Pleasant Valley Road from 15.7 sf to 11.14 sf. He also observed that "in most cases, an increase in conveyance is sought, and not the decrease shown by these numbers" and stated that if the five culverts were not removed, the situation would not be made worse. In subsequent emails, he further explained that grade restrictions and the presence of existing culverts precluded the use of a 24 inch RCP to cross Pleasant Valley Road, as originally planned, and that an 18 inch RCP would be used instead. These restrictions also required that the "laterals from the two proposed inlets" that were to connect to a manhole from which the water then would feed into the 18 inch RCP would have to be 15 inch instead of the "City desired minimum of 18"," requiring a waiver from the City's DCM. In another email, Stein addressed what appears to be a second waiver for "declaration of no need for detention." He explained that the PV Project is a "bond funded rehabilitation project," the type of project that is usually approved under a "General Permit" instead of a "full permit," but that a waiver may be necessary for the PV Project to go forward under a "General Permit" because, in contrast to most rehabilitation projects that do not add much impervious cover, the PV Project would add an additional 30,000 square feet of impervious cover.

[3] Stein explained that the "2 18" RCPs can only handle about 19 cfs before overtopping the edge of the road. Yet [water] being sent to them, even under only [sic] existing conditions, is

3

that the HEB area was "causing most of the runoff." The email indicates that a planned increased "time of concentration" on the HEB site was "expect[ed to] reduce the flows and thus stay within the downstream channels," but an assessment of the final impact was yet to be made. Apparently, the City proceeded with the drainage plan without resolving Stein's concerns and completed the PV Project in 2006.

At some time in approximately 2008, the City approved an extension of a previously-approved site plan for redevelopment of an HEB grocery store, including construction of "an approximately 112,750 square foot HEB discount superstore, 3,900 square foot Burger King restaurant, HEB fuel station, and the associated demolition, landscape, drainage, utility, parking, and driveway improvements." The engineer's letter requesting the extension stated that "the discharge from the site at the northeast corner after redevelopment shall not exceed the existing runoff discharged from the site under existing conditions." The letter also indicated a "proposed detention pond [that would] provide more detention volume." According to GHI's engineer, modifications were made to the site plan, but there are no as-built drawings to reflect those changes. Although the PV and HEB Projects were separate projects, conducted at different times, City emails dated late 2005 indicated that the scope of the PV Project had changed and that the portion of the widening of Pleasant Valley Road in front of the HEB, which consisted of a center turn lane, was to be done as

---

approximately 91 cfs. So there is NO DEMONSTRATED CONVEYANCE of the increase in [water] from the bike lanes. As I see it, what this means is that CONVEYANCE CAN NOT BE DEMONSTRATED WITHOUT HAVING A SYSTEM THAT CONVEYS THE FULLY DEVELOPED [WATER] ADEQUATELY." (Emphasis in original.) He concluded that for the facilities to handle the proposed water plus the existing water, the culverts under Elmont and the culverts under the driveways on Elmont would have to be upgraded sufficiently to convey the water and demonstrate conveyance.

4

part of the HEB Project instead of as part of the PV Project, as originally planned. The HEB Project was completed in approximately 2009.

## PROCEDURAL BACKGROUND

In 2011, GHI filed suit claiming that its property has been repeatedly flooded and rendered useless since January 2010 and asserting claims for inverse condemnation and nuisance. GHI alleged that the City had approved an incorrect drainage analysis in connection with the HEB Project, resulting in a deficient detention pond. GHI further alleged that the PV Project reduced drainage capacity along Pleasant Valley Road, including the reduction of the drainage ditch. GHI contended that these actions resulted in diversion of water onto GHI's property, causing damage that the City knew was substantially certain to result, thus constituting a taking without adequate compensation and a nuisance. The City filed a plea to the jurisdiction challenging GHI's pleadings and contending that the allegations in the petition concerning the HEB Project "completely negat[ed] that the City *intended* in any way for the Property to be flooded" and demonstrated, at most, that the City negligently relied on an analysis provided to it. The City further argued that because the HEB Project was not a public use, GHI had failed to allege that the taking was for public use. Thus, the City argued, the trial court lacked jurisdiction to entertain GHI's claims regarding the HEB Project. Regarding the PV Project, the City challenged that there had been a taking, claiming that GHI had not alleged that the City had taken action "directly to" GHI's land, but had only complained of actions around its land, nor had GHI alleged unreasonable interference such as blocking access or denial of a permit. Therefore, the City contended, GHI had not properly pleaded an

5

inverse condemnation or nuisance claim and had not established a waiver of the City's governmental immunity.[4]

Before the hearing on the City's plea to the jurisdiction, GHI filed a second amended petition,[5] in which it alleged that the City approved both projects contrary to its DCM; that the approval of the HEB Project resulted in increased flows upstream from GHI's property and increased roadway impervious cover and runoff, imposing a water detention on GHI's property for the benefit of the downstream public and resulting in its property being repeatedly flooded and rendered useless since January 2010; that the approval of the PV Project resulted in increased impervious cover and runoff and diminished the carrying capacity of the west-side ditch on Pleasant Valley Road, resulting in flooding GHI's property, substantially interfering with GHI's use of the property, and causing damage; and that the City was aware or substantially certain that its actions would result in downstream flooding, substantially interfere with GHI's use of its property, and damage GHI's property. Concurrently with its second amended petition, GHI filed a response to the City's plea to the jurisdiction. Attached as evidence to GHI's response were an engineer's affidavit, internal emails among City staff, HEB's request for site plan extension, and emails between the City and HEB representatives. GHI contended that the City emails warning of inadequate drainage on Pleasant Valley Road and the impact increased flows would have on the west-side property owners established that in approving and permitting the projects, the City acted with the knowledge of

---

[4] As discussed more fully below, nuisance is an alternative ground of recovery under the takings clause, and an exception to governmental immunity may apply if it is interrelated with a takings claim. *See Texas Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 733 (Tex. App.—Austin 1999, no pet.).

[5] The appellate record does not contain a first amended petition.

6

obvious risk of flooding to GHI's property. GHI also argued that the City took GHI's property to relieve downstream property from flooding, which is a public use. Finally, GHI argued that it was not required to prove the merits of the alleged taking as long as it had properly asserted the elements of a takings claim.

At the hearing on the City's plea to the jurisdiction, the City agreed to rely on its "Plea to the Jurisdiction with Respect to Plaintiff's First Amended Original Petition" even though GHI filed its seconded amended petition after the City filed its plea to the jurisdiction. The trial court found that GHI had already amended its petition in response to the City's assertions of immunity such that no further amendment was necessary, granted the City's plea in part, and denied the plea as to GHI's takings and nuisance claims. This appeal followed.

## STANDARD OF REVIEW AND APPLICABLE LAW

### Standard of Review

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). A plea questioning the trial court's subject matter jurisdiction raises a question of law that we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). "When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue." *City of Elsa v. Gonzales*, 325 S.W.3d 622, 625 (Tex. 2010) (per curiam) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). When, as here, a plea to the jurisdiction challenges the pleadings, we must determine if the pleader

7

has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 512 (Tex. App.—Austin 2010, no pet.) ("The plaintiff has the initial burden of alleging facts that demonstrate the trial court's jurisdiction to hear the cause.").

To make this determination, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Westbrook*, 231 S.W.3d at 405; *Miranda*, 133 S.W.3d at 226. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227. When the pleadings do not allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate an incurable jurisdictional defect, the issue is one of pleading sufficiency, and the plaintiff should be given an opportunity to amend. *Id.* 133 S.W.3d at 226–27. In determining a plea to the jurisdiction, the trial court may consider any evidence the parties have submitted and must do so when necessary to resolve the jurisdictional inquiry. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. If the relevant evidence is undisputed or fails to raise a fact question, the trial court should rule on the plea as a matter of law. *City of Elsa*, 325 S.W.3d at 626; *Miranda*, 133 S.W.3d at 228.

**Governmental Immunity and the Takings Clause**

Governmental immunity deprives a trial court of subject matter jurisdiction in suits against a political subdivision of the state, including cities when they are performing govenmental

functions, unless the political subdivision consents to suit, and therefore is properly asserted in a plea to the jurisdiction. *Rolling Plains Groundwater Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 759 n.4 (Tex. 2011) (per curiam); *Miranda*, 133 S.W.3d at 224, 225–26. There is a clear and unambiguous limited waiver of immunity for valid claims under article I, section 17 of the Texas Constitution, the "takings clause," which provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ." Tex. Const. art. I, § 17; *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980); *City of Midlothian v. Black*, 271 S.W.3d 791, 799 (Tex. App.—Waco 2008, no pet.). If the government appropriates property without paying adequate compensation, the owner may bring an inverse condemnation claim to recover the resulting damages. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992).

To plead a valid inverse condemnation claim and establish waiver of immunity under the takings clause, a plaintiff must allege that the governmental agency (1) intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in taking, damaging, or destroying the plaintiff's property (3) for public use. *General Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Steele*, 603 S.W.2d at 791. The intent element may be met by a showing that the governmental entity "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage was substantially certain to result from an authorized government action—that is, that the damage is 'necessarily an incident to, or necessarily a consequential result of' the government's action." *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004) (quoting *Texas Hwy. Dep't v. Weber*, 219 S.W.2d 70, 71 (Tex. 1949)). "There is

9

no concrete rule for determining whether a use is a public use; each case is usually decided upon the basis of its own facts and the surrounding circumstances." *Whittington v. City of Austin*, 174 S.W.3d 889, 897 n.3 (Tex. App.—Austin 2005, pet. denied) (citing *Coastal States Gas Prod. Co. v. Pate*, 309 S.W.2d 828, 833 (Tex. 1958)). Generally, judicial decisions have narrowed the meaning of the term to situations in which the damages are incident to public works. *Steele*, 603 S.W.2d at 790. Texas courts have found public use when the public is "'entitled to share indiscriminately in the proposed use as a matter of right.'" *Whittington*, 174 S.W.3d at 897 n.3 (quoting Daniel B. Benbow, *Public Use as a Limitation of the Power of Eminent Domain in Texas*, 44 Tex. L. Rev. 1499, 1500 n.8 (1966)). Thus, public use occurs when "'there results to the public some definite right or use in the business or undertaking to which the property is devoted.'" *Pate*, 309 S.W.2d at 833; *Dyer v. Texas Elec. Serv. Co.*, 680 S.W.2d 883, 885 (Tex. App.—El Paso 1984, writ ref'd n.r.e.). Whether particular facts constitute a taking is a question of law. *Little-Tex*, 39 S.W.3d at 598 (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998)).

A claim for nuisance is an alternative ground of recovery under article I, section 17 and is also an exception to sovereign immunity if it rises to the level of a constitutional taking. *Jennings*, 142 S.W.3d at 311; *City of Abilene v. Downs*, 367 S.W.2d 153, 159 (Tex. 1963); *Texas Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 733 (Tex. App.—Austin 1999, no pet.). When, as here, a nuisance claim is interrelated with or in the nature of a takings claim, the elements of the inverse condemnation and nuisance claims are the same, and a valid claim for inverse condemnation under the takings clause also establishes a valid interrelated nuisance claim. *See City of Sunset Valley*, 8 S.W.3d at 732–33 (waiver of immunity for inverse condemnation claim under

10

article I, section 17 also waived immunity for nuisance claim); *cf. Jennings*, 142 S.W.3d at 311, 316 (where plaintiff failed to establish requisite intent for waiver of sovereign immunity as to takings claim and asserted no other basis for waiver of immunity as to nuisance claim, city was also immune from nuisance claim); *Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 460–61 (Tex. App.—Fort Worth 2002, no pet.) (claim for simple nuisance not interrelated with takings claim did not fall within exception to sovereign immunity).

## DISCUSSION

**Intent**

In its first issue, the City argues that GHI has not met the intent element of its takings claim.[6] In its plea to the jurisdiction, the City argued that GHI had not stated a valid takings claim because its pleadings showed negligence at most and negated intent on the part of the City. In its second amended petition, GHI alleged that the City's approval of the PV and HEB Projects caused repeated flooding of GHI's property, imposing a water detention for the benefit of the downstream public and interfering with GHI's use of the property, and that the City was aware or substantially certain that its actions would cause these results. Construing the pleadings liberally in favor of jurisdiction, looking to GHI's intent, and accepting the allegations in the pleadings as true, *see Westbrook*, 231 S.W.3d at 405; *Miranda*, 133 S.W.3d at 226, we conclude that GHI's pleadings do not complain of the City's negligence or omissions but, instead, assert the essential intent

---

[6] Because the parties agree that GHI's nuisance claim is interrelated with its inverse condemnation claim under article I, section 17, we address both claims as GHI's takings claim, as do the parties. *See City of Sunset Valley*, 8 S.W.3d at 733.

11

element necessary to state a facially valid takings claim. *See Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555–56 (Tex. 2004) (evidence that damage from increased flooding was inevitable result of district's construction of reservoir and its operation as intended sufficient to support trial court's finding of taking even though plaintiff offered some evidence of careless operation by district); *Jennings*, 142 S.W.3d at 314; *Little-Tex*, 39 S.W.3d at 598; *cf. City of El Paso v. Ramirez*, 349 S.W.3d 181, 187 (Tex. App.—El Paso 2011, no pet.) (pleadings alleging omissions by city did not state claim for inverse condemnation because governmental entity's failure to act cannot rise to level of taking); *City of Midlothian*, 271 S.W.3d at 800 (petition containing no allegation that city knew damage was substantially certain to occur failed to plead valid inverse condemnation claim); *Bell v. City of Dallas*, 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.) (pleadings containing only allegations that damage was caused by negligent omissions and no allegations that city intentionally performed acts affirmatively negated takings claim); *City of Del Rio v. Felton*, No. 04-06-00091-CV, 2007 Tex. App. LEXIS 660, at *25–26 (Tex. App.—San Antonio Jan. 31, 2007, no pet.) (mem. op.) (allegation that city had notice of water damage to building on opposite side of park from plaintiff's property failed to state facially valid takings claim as to water damage to plaintiff's structure); *Evatt v. Texas Dep't of Transp.*, No. 11-05-00031-CV, 2006 Tex. App. LEXIS 4268, at *12 (Tex. App.—Eastland May 18, 2006, pet. denied) (mem. op.) (homeowners who did not allege department either knew or was substantially certain their homes would flood as result of construction methods used by department did not sufficiently allege takings claim).

On appeal, the City, which did not present any jurisdictional evidence, contends that GHI's evidence, presented after the City filed its plea, is insufficient to establish the requisite intent. The City asserts that the emails of Stein, a City engineer, do not demonstrate that the City knew with substantial certainty that its actions would result in a taking of GHI's property. The City contends that the emails show, at most, a difference of opinion among city staff members on DCM standards and "on the amount of impervious surface increase on the street without corresponding drainage upgrades." The City also argues that GHI negated its allegation of increased flooding by presenting evidence of preexisting drainage problems in the area and failing to present evidence of preexisting conditions on its property.[7] In short, the City does not dispute GHI's jurisdictional evidence; it simply argues that the evidence negates, or is insufficient to raise a fact issue as to, the element of intent. We find this argument unpersuasive.

GHI presented evidence showing the City was aware that inadequate conveyance of the increase in water from the PV Project on the west side of Pleasant Valley Road, where GHI's property was located, "would arise" from the approved projects. Stein, who was assigned to the project, initially warned that the PV Project altered the drainage pattern, would decrease conveyance of water across Pleasant Valley Road, and "may even make the ponding situation on the west side of Pleasant Valley worse" and observed that the City's "hope" was that west-side property owners would not be affected any more than they already were. More than a year later, after changes were made to the drainage plan that reduced some culverts to a size below the City's desired minimum,

---

[7] The City also contends that GHI's "real complaint" is that the City did not fix the preexisting drainage problems, which cannot form the basis of a takings claim. As stated previously, we do not construe GHI's pleadings to allege negligent acts or omissions on the part of the City.

13

he predicted that a "condition would arise" on the west side of Pleasant Valley Road in which the culverts under Elmont could not handle the conveyance of increased water from the proposed additional impervious cover because they could not handle the conveyance of the existing water. There is no evidence that the plan was revised to upgrade the culverts on Elmont and under the driveways on Elmont, as Stein concluded was necessary to adequately convey water from the proposed impervious cover being added to the existing water.

Stein's comments, read together, do not merely show that the City did not plan to correct the drainage problems in the area, as the City contends, but also show the City's awareness that approval of the PV Project would increase impervious cover, decrease water conveyance in an area where conveyance was already inadequate, and likely result in "ponding" on the west side of Pleasant Valley Road where GHI's property is located. *See City of Borger v. Garcia*, 290 S.W.3d 325, 330 (Tex. App.—Amarillo 2009, pet. denied) (citing *Norman v. Schaen, Inc. v. City of Dallas*, 536 S.W.2d 428, 429–30 (Tex. Civ. App.—Dallas 1976, no writ)) (only duty imposed on city in constructing drainage system is not to increase flow of surface water across appellees' property). Despite the City's assertion that there was a difference of opinion among city staff, the City did not present evidence that the City disagreed with Stein regarding his predictions of inadequate water conveyance and west-side ponding. Further, although there is evidence that steps were being taken during the PV Project to "reduce the flow and thus stay within the downstream channels" as to that "30+ acres" composing the HEB site, from which "most of the runoff" in the area came, there is no evidence of the final impact of the planned corrective steps. Moreover, the City subsequently approved the addition of a turn lane in connection with the HEB project, which

14

was not part of the original HEB site plan, and there is no evidence that any corresponding steps were taken to reduce and contain the flow for that portion of the HEB Project, which added even more impervious cover to Pleasant Valley Road and additional water to an already inadequate system, while further reducing the capacity of the west-side drainage ditch. *See id.* In fact, according to GHI's engineer, both projects were completed without a provision for detention systems of increased capacity to west-side downstream conveyance.

Nor is it dispositive that GHI presented evidence of existing flooding in the area and did not offer evidence establishing conditions on its property prior to the projects. In its response to the City's plea to the jurisdiction, GHI asserted that it was undisputed that its property had experienced increased flooding since the completion of the projects. The supreme court has held that changes in the "character" of preexisting flooding—whether, for example, the water "'arrived sooner, flowed faster, and [was] more forceful, deeper, and longer-lasting'"—may form the basis of a takings claim. *See Gragg*, 151 S.W.3d at 555 (quoting trial court's findings) (brackets in original). We believe that GHI is not required to establish the full extent of and nature and degree of any alleged increased flooding to invoke the court's jurisdiction. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (plaintiffs not required to "put on their case simply to establish jurisdiction"); *City of El Paso v. Mazie's, L.P.*, No. 08-11-00233-CV, 2012 Tex. App. LEXIS 10540, at *31 (Tex. App.—El Paso Dec. 19, 2012, pet. filed) (mem. op.) (pleading of recurrence of flooding, which goes to proof of takings claim, not required to establish jurisdiction in takings claim) (citing *Doss v. City of Victoria*, No. 13-07-00306-CV, 2007 Tex. App. LEXIS 9872, at *11 (Tex. App.—Corpus Christi Dec. 20, 2007, no pet.) (mem. op.)). We express no opinion on the merits of GHI's claims but

conclude that GHI has sufficiently pleaded the intent element of a takings claim and that its evidence

raises a fact issue with regard to the City's intent. *See City of Elsa*, 325 S.W.3d at 626; *Jennings*,

142 S.W.3d at 314; *Miranda*, 133 S.W.3d at 227–28. We overrule the City's first issue.[8]

**Public Use**

In its second issue, the City argues that GHI has insufficiently pleaded that the alleged

taking of its property was for a public use. The City contends that the HEB is not a public use and,

in the alternative, that to the extent the center turn lane portion of the HEB Project is a public use,

only that portion of the alleged flooding attributable to the turn lane could form the basis of a takings

claim. Regarding the PV Project, which the City does not dispute is a public use, the City argues that

GHI has not shown that the alleged flooding was caused by the PV Project, as opposed to the HEB

Project or preexisting conditions. We address these arguments in turn.

Assuming without deciding that the portion of the HEB Project other than the turn

lane is not a public use, we conclude that the turn lane serves a public use. As part of a roadway

project, the turn lane is in the nature of a public work. *See Brantley v. Texas Youth Comm'n*,

365 S.W.3d 89, 106 (Tex. App.—Austin 2011, no pet.) ("The Constitution limits compensation to

damages for or applied to a public use, and judicial restraints have narrowed that phrase to damages

which arise out of or as an incident to some kind of public works.") (quoting *Steele*, 603 S.W.2d at

789) (Internal quotations omitted.) The public may "share indiscriminately" in the use of the turn

---

[8] Because we find that Stein's emails are sufficient to raise a fact issue as to intent, we do not reach the remainder of the City's arguments challenging GHI's evidence. *See* Tex. R. App. P. 47.1.

16

lane "as a matter of right," *see Whittington*, 174 S.W.3d at 897, and thus has "some definite right or use in" the turn lane, *see Pate*, 309 S.W.2d at 833; *Dyer*, 680 S.W.2d at 885. Members of the public shopping at the HEB Project site will enjoy the benefits of the safety and convenience provided by a center turn lane. *See Dyer*, 680 S.W.2d at 885 (power line to serve single customer, Gulf, would arguably benefit public by increasing oil production of Gulf). Further, it is the character of the use that determines public use, not the extent of the use. *See id.* at 885 (citing *Housing Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79, 84 (Tex. 1940)). "'It is immaterial if the use is limited to the citizens of a local neighborhood, or that the number of citizens likely to avail themselves of it is inconsiderable, so long as it is open to all who choose to avail themselves of it. The mere fact that the advantage of the use inures to a particular individual or enterprise, or group thereof, will not deprive it of its public character.'" *Higginbotham*, 143 S.W.2d at 84 (quoting *West v. Whitehead*, 238 S.W. 976, 978 (Tex. Civ. App.—San Antonio 1922, writ ref'd)). While we agree with the City that only that portion of the HEB project attributable to a public use may form the basis of a takings claim, we believe the degree of the flooding resulting from the turn lane is a matter of proof and need not be shown for GHI's pleadings to establish jurisdiction. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Mazie's*, 2012 Tex. App. LEXIS 10540, at *31.

Regarding the PV Project, the parties agree it is a public work project that serves a public use and can form the basis of a takings claim. *See Steele*, 603 S.W.2d at 789; *Brantley*, 365 S.W.3d at 106. The City argues, however, that GHI has not demonstrated that the alleged flooding is the result of the PV Project rather than the HEB Project. The City contends that since the PV Project was completed in 2006, it is "unlikely" that the flooding GHI alleges has rendered

17

its property useless "since January 2010" is attributable to the PV Project. The only evidence on causation is the affidavit of GHI's engineer, who stated that both projects resulted in flooding on GHI's property. Morever, as with the City's argument concerning the HEB Project, the questions of causation and what portion, if any, of the flooding is attributable to the PV Project and the turn lane, as opposed to any non-public use portion of the HEB Project, are matters of proof for GHI to establish in its case on the merits and are not facts that must be proven to establish jurisdiction. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Mazie's*, 2012 Tex. App. LEXIS 10540, at *31. We therefore conclude that GHI has sufficiently pleaded the public use element of a takings claim and overrule the City's second issue.

## CONCLUSION

Having overruled the City's issue, we affirm the trial court's order.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   April 30, 2013

18