**Opinion issued June 6, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00854-CV

————————————

**THE STATE OF TEXAS, Appellant**

**V.**

**MOMIN PROPERTIES, INC. AND W & J INVESTMENTS, INC. D/B/A GAS "N" STUFF, Appellees**

---

On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Case No. 1003171

---

## O P I N I O N

The State of Texas brings this interlocutory appeal from the denial of a plea to the jurisdiction challenging the legal viability of an inverse condemnation suit brought by the owners of a corner gas station. The property at issue abutted a

farm-to-market road until the State constructed an overpass, which had the effect of diverting the main flow of traffic which previously had passed directly by the gas station.

In support of its jurisdictional plea, the State presented evidence that its construction of an overpass never impeded direct access to the two public roads adjacent to Momin's property, which were the preexisting routes to access the gas station. The property owners did not present evidence raising a fact issue that access to the property in question was materially and substantially impaired, so we reverse the trial court's order. However, because the record reflects that the property owners were prepared to present evidence before the trial court denied the State's plea, we remand for further proceedings.

## Background

Appellee Momin Properties owns a gas station located at the intersection of Huffsmith-Kuykendahl Road and Farm-to-Market Road 2978, also known as Huffsmith-Kohrville Road. The property is leased to appellee W&J Investments, Inc.; for ease of reference, this opinion refers to both appellees as Momin. Drivers can enter or exit the gas station at four locations—two accessing the east-westbound Huffsmith-Kuykendahl road, and two accessing the north-southbound FM 2978.

2

In 2009, the State began construction of a raised overpass bridge for FM 2978 to cross over railroad tracks located to the north of Momin's gas station. The overpass bridge was added as part of a raised portion of FM 2978. The original route of FM 2978 runs parallel to the raised highway at ground level, now serving as a frontage road. All construction on the overpass was completed within the State's preexisting right of way. After completion of the overpass in May 2011, traffic continuing to travel north-south was switched to the overpass and the State closed off the ground-level portion of the frontage road at railroad tracks. Even after the switch, the frontage road alongside FM 2978 remains open to the gas station. The overpass project was completed on January 5, 2012.

After traffic was switched from the ground-level to the overpass, Momin filed suit against the State, alleging a taking of private property for a public purpose without compensation in violation of the Texas Constitution. Momin alleged that the State "willfully and negligently commenced construction of a north- and south-bound overpass . . . in front of Plaintiff's property, preventing and causing partial and permanent restriction of access to Plaintiff's property."

The State filed a plea to the jurisdiction and a motion to dismiss, asserting sovereign immunity. It argued that Momin could not establish as a matter of law that there had been a material and substantial impairment of access, as it must to prevail on its takings claim. In support of the motion to dismiss, the State filed an

3

affidavit sworn by a supervisor of the FM 2978 overpass project. The affidavit

stated, in part:

> II.  . . . This project involved the construction of a bridge over the railroad tracks located at the intersection of Farm to Market 2978 and Huffsmith-Kuykendahl Road. The construction of this project began on November 19, 2009 and ended on September 23, 2011. The project was fully completed on January 5, 2012. Traffic was switched to the bridge crossing on May 31, 2011.

> III.  At no time during this project were the Plaintiffs driveways closed. No new right of way was required for this project and the entire project was completed within the State's right of way.

Attached to the affidavit were two aerial images depicting the relevant roads

and Momin's property, including this depiction of the relevant area after the

completion of construction:

4



Momin filed a response and requested a hearing pursuant to *State v. Wood Oil Distributing, Inc.*, 751 S.W.2d 863 (Tex. 1988). After a hearing during which Momin offered to present evidence, the trial court denied the State's plea to the jurisdiction and motion to dismiss without receiving any additional evidence. The State then filed this timely appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2011).

**Analysis**

Whether a court has subject-matter jurisdiction is a question of law, which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Sovereign immunity, unless waived, shields the State from lawsuits for damages. *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). The State may assert sovereign immunity from suit in a plea to the jurisdiction, which seeks dismissal of a case for lack of subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637–38 (Tex. 1999). In reviewing the ruling on a plea to the jurisdiction, we determine whether the plaintiff's pleadings, construed in favor of the plaintiff, allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case. *Hearts Bluff*, 381 S.W.3d at 476; *Miranda*, 133 S.W.3d at 226. If evidence central to the jurisdictional issue is submitted, it should be considered in ruling on the plea to the jurisdiction. *Miranda*, 133 S.W.3d at 227. Evidence submitted may rebut the

6

pleadings and undermine waiver of immunity. *Hearts Bluff*, 381 S.W.3d at 476. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

## I.      Inverse condemnation

The Texas Constitution provides, in pertinent part, that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ." TEX. CONST. art. I, § 17. Inverse condemnation is a cause of action against the government to recover the value of property that has been in fact taken, even though the government agency did not formally exercise the power of eminent dominant or initiate condemnation proceedings. *Hearts Bluff*, 381 S.W.3d at 476; *City of Houston v. Mack*, 312 S.W.3d 855, 861 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Although sovereign immunity generally protects the State from lawsuits, it offers no shield against a valid inverse condemnation claim brought under the Texas Constitution. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *GAR Assocs. III, L.P. v. State*, 224 S.W.3d 395, 401 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980)). "[D]etermining whether a taking has occurred is a question of law." *Hearts Bluff*, 381 S.W.3d at 477.

7

To recover on an inverse condemnation claim, a property owner must establish that (1) the State intentionally performed an act (2) that resulted in the taking, damaging, or destruction of its property (3) for public use. *Little-Tex*, 39 S.W.3d at 598; *Mack*, 312 S.W.3d at 861. A direct physical invasion of property is not required to entitle an owner to compensation for the taking. *GAR Assocs.*, 224 S.W.3d at 401 (citing *DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex. 1965)). Rather, a property owner is entitled to compensation for the diminution in the value of property as long as he proves that there was a "material and substantial impairment" of access to the property. *State v. Heal*, 917 S.W.2d 6, 10 (Tex. 1996). Like determinations of whether property has been damaged under the constitution generally, determining whether there is a material and substantial impairment to the property as a result of the taking is a question of law. *Id.* at 9; *State v. Schmidt*, 867 S.W.2d 769, 777 (Tex. 1993). In order to show a material and substantial interference with access, the property owner must show that (1) there has been a total but temporary restriction of access, (2) a partial but permanent restriction of access, or (3) a temporary limited restriction of access caused by illegal or negligent activity. *City of Austin v. Avenue Corp.*, 704 S.W.2d 11, 13 (Tex. 1986).

The material and substantial impairment test allows recovery when the access for which the property was specifically intended is rendered unreasonably

8

deficient, even when normal access remains reasonably available. *Heal*, 917 S.W.2d at 10. But a compensable taking has not occurred when a property owner has reasonable access to his property after construction of the improvement. *Burris v. Metro. Transit Auth.*, 266 S.W.3d 16, 22 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (quoting *DuPuy*, 396 S.W.2d at 109). Although a property owner may suffer a loss in the form of a diminished property value due to an adjacent road closure, such an injury does not amount to a compensable taking when the property owner retains reasonable access to a remaining adjacent road. *Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111, 114 (Tex. 1965); *Burris*, 266 S.W.3d at 22–23. Even when an entire access point is closed, access to a business is not materially and substantially impaired if another access point on a public street remains unaffected. *City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 66 (Tex. 2007).

It is also well-settled that diminution in the value of property due to diversion of traffic, diminished exposure to traffic, or altered accessibility to the roadway does not amount to a material and substantial impairment of access. *State v. Petropoulos*, 346 S.W.3d 525, 532 (Tex. 2011); *Schmidt*, 867 S.W.2d at 773–74 (collecting cases). "[A]n abutting property owner does not have a vested interest in the traffic that passes in front of his property." *Schmidt*, 867 S.W.2d at 774 (quoting *DuPuy*, 396 S.W.2d at 109). Because "highways primarily are for the

9

benefit of the traveling public, and are only incidentally for the benefit of those who are engaged in business along its way," business owners necessarily assume the risk that new roads may be built that will "largely take away the traveling public." *State Highway Comm'n v. Humphreys*, 58 S.W.2d 144, 145 (Tex. Civ. App.—San Antonio 1933, writ ref'd) (quoted in *Schmidt*, 867 S.W.2d at 773). Thus, a property owner cannot recover for damages when traffic is merely required to travel a more circuitous route to reach the property in question. *State v. Bhalesha*, 273 S.W.3d 694, 698–99 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988)).

Momin's pleading alleges generally that access to its gas station was "restricted" after construction began on the raised overpass, but it fails to describe how access was restricted. In its motion to dismiss, the State attached the affidavit of the supervisor of the overpass project stating that the driveways to the gas station were never "closed." According to the uncontroverted statements of the supervisor, during the construction of the overpass, none of the roads around the gas station were closed or impeded and the gas station's entrances were open to both FM 2978 and Huffsmith-Kuykendahl Road. Construction of the overpass did alter the flow of traffic on FM 2978 near the gas station. After "[t]raffic was switched to the bridge crossing," a vehicle traveling on FM 2978 would have to leave the highway and drive along the access road to reach the gas station. This

10

means that traffic on the main lanes of FM 2978 is no longer forced to pass directly by the gas station at ground level. The gas station's entrances remain open on both previously existing ground-level roads. The only other change affecting access to the gas station, during the construction and afterwards, is that the access road now has been closed at the railroad tracks located just north of the gas station. In other words, there has been no physical change in the direct method of access to the gas station, but vehicles traveling on FM 2978 must travel a more circuitous route to reach it.

Momin alleges that the closure of the access road north of the gas station at the railroad tracks is a partial permanent restriction of access or a temporary limited restriction of access caused by illegal or negligent activity. *See Avenue Corp.*, 704 S.W.2d at 13 (noting these are types of material and substantial impairment of access). However, the construction of the overpass and closure of the access road are not compensable restrictions of access because Momin retains reasonable access to both roads that abut its property. *See, e.g., Cnty. of Bexar v. Santikos*, 144 S.W.3d 455, 460 (Tex. 2004) (compensation is "not required to a business that retains other reasonable means of ingress"). On this record, Momin has adduced no evidence to suggest that the property lacks or ever lacked access to the adjacent roads. And if the property retains reasonable access to the public road system, even if one abutting road is entirely closed, a material and substantial

11

impairment of access has not occurred because the property retains some "reasonable access" to the public streets. *See TPLP Office Park*, 218 S.W.3d at 66; *Archenhold*, 396 S.W.2d at 114*; Burris*, 266 S.W.3d at 24. Thus, the closure of one of the roads abutting Momin's property just to the north of the property has not been shown to be a material and substantial impairment of access, whether that closure is categorized as a partial permanent or temporary limited restriction. Two cases that also involve the conversion of adjacent roads to highway overpasses are instructive.

In *State v. Bhalesha*, 273 S.W.3d 694 (Tex. App.—Houston [14th Dist.] 2008, no pet.), construction of an overpass did not materially and substantially impair access to a grocery store, even though the store permanently lost access to an abutting road, a greater restriction to access than Momin alleged here. The property owners owned a grocery store at the intersection of First Street and Avenue G in Rosenberg, Texas. *Id.* at 696. The State converted First Street into a raised overpass, permanently ending access from the grocery store parking lot to First Street. *Id.* Additionally, the State constructed barricades on Avenue G where it intersected with the new overpass. *Id.* Effectively, the grocery store went from being at the intersection of two roads to being in a cul-de-sac, often requiring traffic to travel an additional one or two blocks to reach the store. *Id.* at 701. However, because the grocery store retained open access to a public road at

12

ground-level without requiring traffic to maneuver between obstructions, and the overpass was a clear public improvement, the *Bhalesha* Court held there was no material and substantial impairment of access. *Id.* at 701–02 (citing *TPLP Office Park*, 218 S.W.3d at 66); *see also Burris*, 266 S.W.3d at 24 (holding that access to a scooter store was not materially and substantially impaired because the store retained full access to a public road along one side of the property, although intersecting road abutting the store was totally cut-off by construction of railtracks).

Thus, under *Bhalesha*, even if Momin had alleged that the overpass totally blocked access to the gas station from the west side facing FM 2978, which it did not, that still would not have been a compensable taking because access remains open to the south by way of Huffsmith-Kuykendahl Road. The closure of the access road at the railroad tracks is not a compensable injury because the closure does not impair reasonable access to the gas station; instead, the closure merely requires traffic to travel a more circuitous route to reach the gas station or cross the railroad tracks.

In *State v. Schmidt*, 867 S.W.2d 769 (Tex. 1993), the Supreme Court of Texas held that property owners could not recover damages for changes caused by a similar conversion of a ground-level road into a raised highway. The property owners owned a tract of property abutting Research Boulevard in Austin. *Id.* at

13

771. The State built a raised highway to replace the main part of Research Boulevard, turning the ground-level portion into a frontage road. *Id.* at 771–72. The property owners sued to recover based on the diminished value of their property due to the impairment of visibility caused by the highway, the inconvenience caused by the construction work, the diversion of traffic from the ground-level road to the highway, and the resulting circuity of travel required to access their tract. *Id.* at 772. Because a property owner has no vested interest in the volume or route of nearby passing traffic, the visibility of property to traffic, or the mere inconvenience caused by construction when there is no total temporary or partial permanent restriction of access, the owners had not suffered a compensable taking. *Id.* at 774–75.

As in *Bhalesha* and *Schmidt*, Momin has not shown that a compensable taking has occurred. Because the undisputed evidence before the trial court showed that access between the gas station and both the adjacent roads remains open and unimpeded, based on this record the construction of the overpass and closure of the ground-level portion of FM 2978 have not been shown to have eliminated reasonable access to Momin's gas station, and therefore a material and substantial impairment of access to the property has not been shown. *See TPLP Office Park*, 218 S.W.3d at 66; *Archenhold*, 396 S.W.2d at 114*; Bhalesha*, 273 S.W.3d at 702*; Burris*, 266 S.W.3d at 24. The remaining injury to Momin's

14

property is a mere change in the circuity of travel for some of the traffic to the gas station, which does not amount to a material and substantial impairment of access, and, therefore, is not a compensable taking. *See Schmidt*, 867 S.W.2d at 774–75; *Bhalesha*, 273 S.W.3d at 701–02; *Burris*, 266 S.W.3d at 24. Furthermore, to the extent Momin's allegations concern the effect of the construction activities themselves, any inconvenience due to construction activities, short of precluding access to the property, is also not a compensable taking. *Schmidt*, 867 S.W.3d at 775.

## II.   Texas Property Code § 21.042

Momin relies on section 21.042 of the Texas Property Code to argue that after its recent amendment, subsection 21.042(d) provides that a property owner is entitled to a trial on the issue of whether access to property has been materially impaired. Subsection 21.042(d) provides:

> In estimating injury or benefit under Subsection (c) [which requires the special commissioners to determine damages], the special commissioners shall consider an injury or benefit that is peculiar to the property owner and that relates to the property owner's ownership, use, or enjoyment of the particular parcel of real property, *including a material impairment of direct access on or off the remaining property that affects the market value of the remaining property*, but they may not consider an injury or benefit that the property owner experiences in common with the general community, *including circuity of travel and diversion of traffic. In this subsection, "direct access" means ingress and egress on or off a public road, street, or highway at a location where the remaining property adjoins that road, street, or highway.*

TEX. PROP. CODE ANN. § 21.042(d) (West 2012) (emphasis supplied). The amendment added the language italicized above. *See* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3504, *amended by* Act of May 19, 2011, 82nd Leg., R.S., ch. 81, § 15, sec. 1, 2011 Tex. Gen. Laws 354, 360. Momin argues that the amendment supports the trial court's ruling because Momin's inverse condemnation claim must be submitted to the factfinder. But section 21.042 does not apply to this case to alter the standard for resolving inverse condemnation claims as Momin claims.

Chapter 21 of the Texas Property Code governs condemnation proceedings initiated by the government, not inverse condemnation claims brought by landowners. *See* TEX. PROP. CODE ANN. §§ 21.001–.103. When property has been taken or damaged without a proper condemnation proceeding, an inverse condemnation proceeding is the proper avenue to seek redress. *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 387 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting also that the proceeding is denominated "inverse" because the property owner brings the suit rather than the State in a condemnation proceeding). Inverse condemnation claims and statutory condemnation claims can be addressed in the same proceeding, but inverse claims and statutory claims are separate categories of claims. *Kopplow Dev., Inc. v. City of San Antonio*, No. 11-0104, 2013 WL 854320, at *3 (Tex. Mar. 8, 2013). Nothing in

subsection 21.042(d) addresses or alters the rule that a determination of whether a taking has occurred in an inverse condemnation case is resolved by courts as a matter of law. *See Hearts Bluff*, 381 S.W.3d at 477; *Santikos*, 144 S.W.3d at 460.

Furthermore, section 21.042 does not address the material and substantial impairment standard and does not alter the well-established rule that a property owner cannot recover for a change in the circuity of travel. Instead, the amending language clarifies that a property owner's injury from diversion of traffic or circuity of travel are not to be considered. TEX. PROP. CODE ANN. § 21.042(d). This is the heart of Momin's claim, as it has presented no evidence showing how access to the property has been restricted, and the State presented evidence that access from both roads adjacent to the property has been and remains entirely open and unimpeded. *See Miranda*, 133 S.W.3d at 227–28 (holding that, unless the evidence raises a fact question regarding jurisdiction, rulings on a plea to the jurisdiction are made as a matter of law). Thus, the terms of subsection 21.042(d) do not require consideration of Momin's alleged injury.

For these reasons, we conclude that subsection 21.042 does not require that Momin's claims be submitted to the factfinder.

**Conclusion**

Momin has failed to establish based solely on its pleadings that the impairment of access to its property is or was material and substantial. *See*

*Bhalesha*, 273 S.W.3d at 702. Instead, the evidence and pleadings on file show that access to Momin's property has not been materially and substantially impaired by construction of the FM 2978 overpass. Accordingly, the trial court erred in denying the State's plea to the jurisdiction on this record. However, because the trial court ruled in Momin's favor without the benefit of the evidence that it was prepared to present, the record does not reflect any additional evidence that Momin may have presented in its attempt to demonstrate a material and substantial impairment of access. Accordingly, we reverse the trial court's order and remand to the trial court for further proceedings consistent with this opinion.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.