

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00292-CV

**TEXAS DEPARTMENT OF TRANSPORTATION**,
Appellant

v.

**C-5 HOLDINGS, LLC** and Stone Oak Storage Partners, Ltd.,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-23191
Honorable Norma Gonzales, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: October 18, 2023

MOTION TO DISMISS DENIED;
REVERSED AND RENDERED IN PART; REMANDED IN PART

In this interlocutory appeal, the Texas Department of Transportation ("TxDOT")

challenges the trial court's order denying its motion for summary judgment on sovereign immunity

grounds. We reverse the trial court's order, render judgment in favor of TxDOT, and remand the case for further proceedings on the remaining claims.[1]

## BACKGROUND

C-5 Holdings, LLC ("C-5") and Stone Oak Storage Partners, Ltd. ("Stone Oak Storage") (collectively, "the plaintiffs") own undeveloped commercial property on U.S. Highway 281 north of Stone Oak Parkway ("U.S. 281"). The plaintiffs' first development was a storage facility called The Keep Storage-Stone Oak ("Keep Storage"). That facility lies at the center of this dispute.

Construction began on Keep Storage in October 2016. Construction plans included pad sites for other businesses and three driveways to connect the plaintiffs' property to U.S. 281; one of the driveways would connect Keep Storage to U.S. 281. Before the plaintiffs completed the driveways, TxDOT began construction on U.S. 281 along the plaintiffs' property.

Webber, L.L.C. ("Webber"), the contractor for TxDOT, stockpiled dirt needed for the project and for other construction along U.S. 281 in front of the plaintiffs' property. The plaintiffs described the stockpile as a massive dirt pile, 50 feet high and 1400 feet long. The dirt pile prevented the plaintiffs from completing the driveway to connect Keep Storage to U.S. 281 and was so big that drivers could not see Keep Storage from U.S. 281.

Rather than accessing Keep Storage via the 322-foot planned driveway, the dirt pile required patrons to drive over a mile south on U.S. 281, then west on Stone Oak Parkway, then north along the parking lot of a restaurant to a private roadway leading to Keep Storage.

---

[1] We issued our memorandum opinion and judgment on May 25, 2022. TxDOT timely filed a motion for rehearing and a motion for en banc reconsideration. Pursuant to our request, the appellees filed responses to both motions. The panel on original submission, having fully examined and considered TxDOT's motion for rehearing and the appellees' response, is of the opinion that TxDOT's motion for rehearing should be granted. *See* TEX. R. APP. P. 49.3. Accordingly, we withdraw our earlier memorandum opinion and judgment and substitute the following memorandum opinion and its accompanying judgment in their place.

The plaintiffs sued Webber and TxDOT for inverse condemnation, nuisance, negligence, and promissory estoppel. TxDOT filed a motion for summary judgment arguing it had sovereign immunity on plaintiffs' inverse condemnation, nuisance, and promissory estoppel claims.

TxDOT filed objections to the plaintiffs' summary judgment evidence. The trial court overruled TxDOT's objections and denied the motion for summary judgment without specifying a reason. TxDOT appeals.

## MOTION TO DISMISS

After the trial court denied its motion for summary judgment, TxDOT filed a notice of appeal and characterized its appeal as a permissible interlocutory appeal. The plaintiffs filed a motion to dismiss the appeal arguing TxDOT seeks an impermissible interlocutory appeal and requested we dismiss the appeal. Because TxDOT's motion for summary judgment constituted a plea to the jurisdiction for interlocutory appeal purposes, we deny the motion to dismiss this appeal. *See PHI, Inc. v. Texas Juv. Just. Dep't*, 593 S.W.3d 296, 301 n.1 (Tex. 2019) ("For purposes of appellate jurisdiction over interlocutory orders, the court of appeals had jurisdiction over the denial of the combined plea to the jurisdiction and motion for summary judgment, regardless of how the trial-court pleading was styled, because the substance of the pleading was to raise sovereign immunity, which implicates subject-matter jurisdiction."); *see also City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (citations omitted) ("A party may appeal an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit. This Court considers 'plea to the jurisdiction' not to refer to a 'particular procedural vehicle,' but rather to the substance of the issue raised."); *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) ("The [l]egislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used.").

**STANDARD OF REVIEW**

"Sovereign immunity, unless waived, shields the state from lawsuits for damages." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). As mentioned above, a governmental entity pursues a plea to the jurisdiction in substance when it asserts sovereign immunity through a motion for summary judgment because it is seeking dismissal of the suit for lack of subject-matter jurisdiction. *See Thomas*, 207 S.W.3d at 339; *see also Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) ("Immunity from suit may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment."). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

In reviewing a ruling on the plea to the jurisdiction, "we determine whether the plaintiff's pleadings, construed in favor of the plaintiff, allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case." *Hearts Bluff Game Ranch*, 381 S.W.3d at 476. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Miranda*, 133 S.W.3d at 227; *see also Hearts Bluff Game Ranch*, 381 S.W.3d at 476 ("If evidence central to the jurisdictional issue is submitted, it should be considered in ruling on the plea to the jurisdiction."). The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a [traditional] summary judgment." *Miranda*, 133 S.W.3d at 228. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. "Evidence submitted with the

plea may rebut the pleadings and undermine waiver of immunity." *Hearts Bluff Game Ranch*, 381 S.W.3d at 476.

**INVERSE CONDEMNATION CLAIM**

In its first issue, TxDOT argues the trial court erred when it denied TxDOT's summary judgment asserting sovereign immunity to the plaintiffs' inverse condemnation claim.

"Inverse condemnation is a cause of action against the government to recover the value of property that has been in fact taken, even though the government agency did not formally exercise the power of eminent domain or initiate condemnation proceedings." *State v. Momin Props., Inc.*, 409 S.W.3d 1, 6 (Tex. App—Houston [1st Dist.] 2013, pet. denied) (citing *Hearts Bluff Game Ranch*, 381 S.W.3d at 476). Sovereign immunity generally protects the State from lawsuits for monetary damages. *See Momin Props.*, 409 S.W.3d at 6. However, sovereign immunity "offers no shield against an inverse condemnation claim brought under article I, section 17 of the Texas Constitution, which waives immunity for the taking, damaging, or destruction of property for public use and authorizes compensation for such destruction." [2] *State v. Bhalesha*, 273 S.W.3d 694, 697 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "[D]etermining whether a taking has occurred is a question of law . . . ." *Hearts Bluff Game Ranch*, 381 S.W.3d at 477.

To recover on an inverse condemnation claim, a property owner must establish that (1) the State intentionally performed an act, (2) that resulted in the taking, damaging, or destruction of the property, (3) for public use. *Momin Props.*, 409 S.W.3d at 6. A property owner is entitled to compensation for the diminution in property value if he can prove there was a "material and substantial impairment" of access to the property. *Id.* "Whether access has been materially and

---

[2] The plaintiffs sued under article I, section 17 of the Texas Constitution.

substantially impaired is a threshold question of law reviewed de novo." *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008).

To show a material and substantial interference with access to one's property, it is necessary to show that there has been (1) a total but temporary restriction of access; (2) a partial but permanent restriction of access; or (3) a temporary limited restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed. *City of Austin v. Ave. Corp.*, 704 S.W.2d 11, 13 (Tex. 1986); *see also Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 84 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The plaintiffs argue their claims fall into this third category, generally citing the expert reports of William Stein and Dan Conway to support their argument. "However, diminished access is not compensable if suitable access remains." *City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 66 (Tex. 2007). The Texas Supreme Court has held "that access to a business was not materially and substantially impaired when one access point was closed, but another access point on a public street remained unaffected." *Id.*; *see also Carson v. State*, 117 S.W.3d 63, 69 (Tex. App.—Austin 2003, no pet.) ("A landowner's access is not materially and substantially impaired if he retains access to his property by way of a different street or a more circuitous route.").

In its summary judgment motion, TxDOT maintained the plaintiffs cannot prove a "material and substantial impairment" of access to their property because the plaintiffs had reasonable access to Keep Storage using a public road. To support its claim, TxDOT submitted an expert opinion in the form of affidavits by Eduardo Reyes, a TxDOT engineer. Reyes opined that the plaintiffs had continual, uninterrupted access to their property since the beginning of the U.S. 281 construction project via Stone Oak Parkway.

The plaintiffs' summary judgment evidence confirms they were able to access their property via Stone Oak Parkway. Casey Ory Kalenkosky, the projector manager for the development, testified in his deposition that customers accessed Keep Storage from U.S. 281 by turning onto Stone Oak Parkway, then entering through a private roadway behind Olive Garden through a roundabout. According to Kalenkosky, a driver had to take a right turn outside a roundabout, go forward for fifty yards, go right, then left onto the private roadway behind Olive Garden, and lastly take a private roadway to Keep Storage.

Gregory L. Gibson[3] also testified in his deposition that a driver could access Keep Storage via a private roadway that runs from Stone Oak Parkway to Keep Storage. According to Gibson, a driver traveling south on U.S. 281 must exit Stone Oak Parkway, take a right on Stone Oak Parkway, turn right by the pad site near Longhorn Steakhouse, go back towards the Chase campus, veer right at the roundabout, go back behind Olive Garden, and then take the private roadway to Keep Storage.

In the following aerial photo—attached to the summary judgment evidence—the green line depicts the planned 322-foot drive from Keep Storage to U.S. 281; the blue line depicts the only route the plaintiffs could use after Webber placed the dirt pile in front of the plaintiffs' property. The private drive runs along the top blue line, beginning at the third bend in the blue line. Keep Storage is the facility above the green numbers.

---

[3] Because the record only contains a portion of Gibson's testimony, it is unclear what title Gibson holds and how Gibson is familiar with the dispute. Neither party objected to Gibson's deposition testimony.



The plaintiffs argue their inverse condemnation claims are compensable because they must travel over a private road to access their property from Stone Oak Parkway. Thus, the plaintiffs argue, because their property cannot be accessed solely from a public road, their access is materially and substantially impaired.

We agree with our sister court that access after "a taking that leaves only a private roadway is significantly different from a taking that leaves a public roadway . . . ." *See Smith v. City of League City*, 338 S.W.3d 114, 125 (Tex. App.—Houston [14th Dist.] 2011, no pet.). However, the fact that a private roadway separates the plaintiffs' property from the access point at Stone Oak Parkway does not render the plaintiffs' claims compensable for one fatal reason: C-5 owns the private roadway and Stone Oak Storage has a perpetual, non-exclusive easement for ingress and

egress on the private roadway.[4] When a private roadway that is owned by a disinterested third party separates a business from access to a public street "there is uncertainty concerning the complainant's ability and right to access his property via the private roadway, and this uncertainty could diminish the value of a complainant's property or cloud the title." *Id.* The same uncertainty does not exist when the private roadway is owned by the complainant because it would be unreasonable to surmise that the complainant would deny himself access, and the right to use the private roadway could not be reasonably called into question. *See County of Bexar v. Santikos*, 144 S.W.3d 455, 461 (Tex. 2004) (holding damages related to access were not compensable when property owner owned the land separating the property at issue from a public roadway and stating the property owner may have prevailed if he "needed permission from his neighbors to access" the public road).

The plaintiffs also argue that the route they had to travel to access their property while the dirt pile blocked their U.S. 281 access is "[sixteen] times longer than the direct drive, and is all but impossible to find by anyone who is not already familiar with it." It is clear from the picture above that the U.S. 281-expansion increased circuity of travel to the property at issue, and it is undisputed that the dirt pile impaired the visibility of the premises to passing traffic. However, the supreme court has held increased circuity of travel caused by a public project is not enough to make damages compensable. *Id.* at 460; *see also TPLP Office Park Props.*, 218 S.W.3d at 66–67 ("Closing an access point and merely causing diversion of traffic or circuity of travel does not result in a compensable taking."). Access to property is not materially and substantially impaired merely because the remaining access points are significantly less convenient. *Dawmar Partners*,

---

[4] The undisputed summary judgment evidence shows that C-5 owns the private roadway connecting Keep Storage to Stone Oak Parkway, and Stone Oak Storage has an irrevocable easement in the private roadway for ingress and egress that can be used by its customers. *See County of Bexar v. Santikos*, 144 S.W.3d 455, 461 (Tex. 2004) (indicating a complainant may retain reasonable access through dedication of "the necessary easements for access").

267 S.W.3d at 880; *see also Momin Props.*, 409 S.W.3d at 7 ("It is also well-settled that diminution in the value of property due to diversion of traffic, diminished expose to traffic, or altered accessibility to the roadway does not amount to a material and substantial impairment of access.").

Further, the plaintiffs' interests in the private road results in contiguous ownership of property from Stone Oak Parkway to the property at issue.[5] The supreme court has made clear that "circuity of travel *within* a particular property is [no] more compensable than circuity of travel *around* it." *Santikos*, 144 S.W.3d at 460 (emphasis in original). Regarding visibility, "[j]ust as a landowner has no vested interest in the volume or route of passersby, he has no right to insist that his premises be visible to them." *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993). Finally, a "'disruption of use due to construction activities' of the condemning authority during a roadway expansion project [is] not compensable." *State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 173 (Tex. 2009).

Here, the pleadings and summary judgment evidence show that the plaintiffs had continual access to their property via Stone Oak Parkway. We acknowledge the circuitous route to reach the plaintiffs' property via Stone Oak Parkway is significantly less convenient and much longer than the direct route from the U.S. 281 access point. However, "difficult or inconvenient access during construction does not constitute a material and substantial impairment of access." *Kosoco, Inc. v. Metro. Transit Auth. of Harris Cnty.*, No. 01-14-00515-CV, 2015 WL 4966880, at *6 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, no pet.) (mem. op.) (citing *Bristol Hotel*, 293 S.W.3d at 173). Because the plaintiffs have not alleged a compensable material and substantial impairment of access to Keep Storage, the trial court erred in concluding TxDOT's sovereign immunity was waived under article 1, section 17 of the Texas Constitution.

---

[5] Again, we recognize Stone Oak Storage's interest in the private roadway is an easement.

Accordingly, TxDOT's first issue is sustained.

## NUISANCE

In their pleadings, the plaintiffs allege TxDOT created a nuisance when it built the pile of dirt in front of the plaintiffs' driveway that "substantially impaired [the plaintiffs'] ability to use, enjoy[,] and/or market their properties . . . ." In its second issue, TxDOT argues sovereign immunity shields it from the plaintiffs' nuisance claim.

"Nuisance liability arises only when governmental immunity is clearly and unambiguously waived." *City of San Antonio v. De Miguel*, 311 S.W.3d 22, 25 (Tex. App.—San Antonio 2010, no pet.). A governmental entity may be liable for a non-negligent nuisance rising to the level of a constitutional taking. *Id.* ("In some cases, a [governmental entity] may be held liable for a non-negligent nuisance—that is, one that rises to the level of a constitutional taking."). Consequently, if the plaintiffs' inverse condemnation claim survives summary judgment, their nuisance claim may likewise survive because the government's alleged constitutional taking constitutes a waiver of its sovereign immunity from the nuisance claim. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004) ("[A] city may be held liable for a nuisance that rises to the level of a constitutional taking.").

As mentioned above, the plaintiffs have failed to plead a compensable taking in its inverse condemnation claim under article 1, section 17 of the Texas Constitution. Consequently, TxDOT has not waived its sovereign immunity. Because the plaintiffs have not asserted any other applicable waiver of immunity, TxDOT is immune from the plaintiffs' nuisance claim. *See City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004) (holding governmental immunity was not waived when plaintiff had not demonstrated a valid takings claim or alleged any applicable waiver of immunity for its nuisance claim). Accordingly, the trial court erred when it denied TxDOT's motion for summary judgment on the plaintiffs' nuisance claim.

TxDOT's second issue is sustained.

### PROMISSORY ESTOPPEL

In their pleadings, the plaintiffs based their promissory estoppel claim on TxDOT's promise they would have three access driveways to U.S. 281 or its access road.[6] The plaintiffs constructed the three driveways at U.S. 281's then-current elevation but could not connect the driveways to U.S. 281 because Webber placed the dirt pile between the plaintiffs' property and U.S. 281. The plaintiffs complained about the dirt pile, including how the dirt pile prevented them from completing the driveways within the time allowed by the permits. TxDOT later issued a change order lowering the elevation of the U.S. 281 access road. The change required reconstruction and regrading of two of the plaintiffs' driveways. According to plaintiffs, TxDOT refused to reimburse the plaintiffs for the cost of reconstruction and regrading "claiming it is not obligated to do so because [the plaintiffs] allowed their permits to expire before tying [the driveways] into the access road."

As a general rule, a governmental unit exercising its governmental powers is not subject to estoppel. *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970). The Supreme Court of Texas, however, has recognized a narrow exception to the general rule as it applies to municipalities "where justice requires its application, and there is no interference with the exercise of . . . governmental functions." *Id.* at 836. The supreme court instructed the exception should be applied "with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Id.*; *see also Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 170 n.36 (Tex. 2013) (indicating the exception has only been applied twice). "For estoppel to apply against the government, two requirements must exist: (1)

---

[6] TxDOT issued permits for the three driveways.

"the circumstances [must] clearly demand [estoppel's] application to prevent manifest injustice," and (2) no governmental function can be impaired." *A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 170 (emphasis omitted).

Since that time, Texas courts have declined to extend the exception beyond municipalities and the exception has never been applied to TxDOT. *See, e.g.*, *S.W. ex rel. A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 422 (Tex. App.—Fort Worth 2014, no pet.) (explaining the exception does not apply to waive school district's immunity from promissory estoppel claim); *Kojo Wih Nkansah v. Univ. of Tex. at Arlington*, No. 02–10–00322–CV, 2011 WL 4916355, at *4 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied) (mem. op.) (declining to extend exception to state university); *Donna Indep. Sch. Dist. v. Gracia*, 286 S.W.3d 392, 396 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (stating the exception has never been applied to school districts).

"As to the first requirement, [the Texas Supreme Court has] applied estoppel to prevent manifest injustice if[] officials acted deliberately to induce a party to act in a way that benefitted the government." *A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 170 (alterations omitted). Here, the record does not show that TxDOT deliberately induced the plaintiffs to act in a way that benefitted TxDOT. Adhering to the supreme court's caution, we decline to apply the exception here. Accordingly, we hold the trial court erred when it denied summary judgment on the plaintiffs' promissory estoppel claim.

TxDOT's third issue is sustained.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

In its fourth issue, TxDOT argues the trial court erred when it overruled TxDOT's objections to the plaintiffs' summary judgment evidence. Because it is not necessary to the disposition of this appeal, we need not address TxDOT's fourth issue. *See* TEX. R. APP. P. 47.1

("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## CONCLUSION

The plaintiffs' motion to dismiss is denied. We reverse the trial court's order denying TxDOT's motion for summary judgment asserting sovereign immunity, and judgment is rendered dismissing the plaintiffs' inverse condemnation, nuisance, and promissory estoppel claims against TxDOT. Because there are pending claims and parties remaining in the suit, we remand the case to the trial court for further proceedings consistent with this opinion.

Irene Rios, Justice