

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00113-CV

TEXAS DEPARTMENT OF TRANSPORTATION, APPELLANT

V.

FAMFIVE HOLDINGS, LLC, APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. DC-2023-CV-1645, Honorable John C. Grace, Presiding

September 16, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

In this interlocutory appeal, the Texas Department of Transportation (TxDOT) appeals from the trial court's order denying TxDOT's plea to the jurisdiction related to an inverse condemnation claim brought by FamFive Holdings, LLC.[1] We reverse the trial court's order and dismiss FamFive's claim.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (authorizing interlocutory appeal from denial of governmental unit's plea to the jurisdiction).

## BACKGROUND

In 2019, FamFive purchased property on the northeast corner of Farm to Market Road 41 ("FM 41") and U.S. 87. FamFive operated a convenience store named Bernard's on this property. In October of 2021, TxDOT began roadway construction to build an overpass on U.S. 87 at the FM 41 intersection. During this construction project, motorists traveling east on FM 41 could not access Bernard's across U.S. 87. During construction, traffic was diverted at the U.S. 87 and FM 41 intersection as well as three miles east of Bernard's on FM 41, but the construction did not close or limit Bernard's points of ingress and egress. It did, however, significantly increase the time and distance necessary for most of Bernard's patrons to reach the store. Access across U.S. 87 was not restored until August of 2024. During the road work, Bernard's experienced a substantial reduction in revenues compared to its revenues prior to commencement of the construction project.

FamFive filed suit against TxDOT for inverse condemnation. It claimed that its lost profits were directly caused by the material and substantial impairment of access to Bernard's caused by TxDOT's construction project. In response, TxDOT filed a plea to the jurisdiction contending that FamFive could not establish a waiver of sovereign immunity for its inverse condemnation claim because the construction project did not limit patrons' access to Bernard's. At the hearing on TxDOT's plea, Philip Thrash, the owner of FamFive, testified regarding the extent to which traffic was diverted due to the road work and to the profits lost by FamFive as a result. At the close of the hearing, the trial court denied TxDOT's plea. TxDOT filed the instant interlocutory appeal.

By its sole issue, TxDOT contends that its sovereign immunity is not waived for FamFive's inverse condemnation claim because its construction project did not materially and substantially impair access to Bernard's. Consequently, the trial court erred in denying its plea to the jurisdiction.

## STANDARD OF REVIEW

"Sovereign immunity, unless waived, shields the state from lawsuits for damages." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). Sovereign immunity defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Id.* at 226. Whether a court has subject matter jurisdiction is a question of law, which we review de novo. *Id.*

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea; however, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 227–28. In reviewing evidence relevant to the jurisdictional issue, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in favor of the nonmovant. *Id.* at 228. This standard generally mirrors that of a traditional summary judgment. *Id.*

3

**LAW ON INVERSE CONDEMNATION**

The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ." TEX. CONST. art. I, § 17. Inverse condemnation allows for a claim against the government for the recovery of the value of property when, even though the government did not formally exercise the power of eminent domain or initiate condemnation proceedings, the property has been taken in fact. *Hearts Bluff*, 381 S.W.3d at 476. A valid inverse condemnation suit is an exception to sovereign immunity's general protection from lawsuits for monetary damages. *GAR Assocs. III, L.P. v. State*, 224 S.W.3d 395, 401 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980)). A trial court determines whether a taking has occurred as a question of law. *Hearts Bluff*, 381 S.W.3d at 477.

To prevail on an inverse condemnation claim, a property owner must establish that (1) a governmental unit intentionally performed an act (2) that resulted in the taking, damaging, or destruction of the owner's property (3) for public use. *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 26 (Tex. 2024). Whether property has been damaged under the constitution is a question of law. *Bass v. City of Dallas*, 34 S.W.3d 1, 5 (Tex. App.—Amarillo 2000, no pet.). To prove that property has been damaged, "access rights must have been materially and substantially impaired." *Id.* To show a material and substantial interference with access, the property owner must show (1) a total but temporary restriction of access, (2) a partial but permanent restriction of access, or (3) a temporary limited restriction of access caused by illegal or negligent activity. *State v. Momin Props.*, 409 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *City of Austin*

4

*v. Avenue Corp.*, 704 S.W.2d 11, 13 (Tex. 1986)). It is not a compensable taking when a property owner has reasonable access to his property during or after construction of the improvement. *Burris v. Metro. Transit Auth.*, 266 S.W.3d 16, 22 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Du Puy v. City of Waco*, 396 S.W.2d 103, 109 (Tex. 1965)). Loss in the form of a diminished property value due to an adjacent road closure is not a compensable taking when the property owner retains reasonable access to a remaining adjacent road. *Momin Props.*, 409 S.W.3d at 7 (citing *Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111, 114 (Tex. 1965), and *Burris*, 266 S.W.3d at 22–23). Access to a property is not materially and substantially impaired if an access point on a public street remains unaffected, even if another access point is entirely closed. *City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 66 (Tex. 2007) (per curiam).

Diminution in the value of property due to diversion of traffic or circuity of travel does not amount to a material and substantial impairment of access. *State v. Petropoulos*, 346 S.W.3d 525, 532 (Tex. 2011); *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 880 (Tex. 2008); *TPLP Office Park Props.*, 218 S.W.3d at 66–67; *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993); *Momin Props.*, 409 S.W.3d at 7; *Bass*, 34 S.W.3d at 6; *see* TEX. PROP. CODE ANN. § 21.042(d) (in assessing damages in a condemnation proceeding, the special commissioners "may not consider an injury . . . that the property owner experiences in common with the general community, including circuity of travel and diversion of traffic"). "[A]n abutting property owner does not have a vested interest in the traffic that passes in front of his property; . . . he cannot recover for loss of trade resulting from a highway relocation; and . . . he is not entitled to damages because of the construction of controlled access highways in such manner as to deny

direct access to the new major highway." *Du Puy*, 396 S.W.2d at 109. Highways are primarily for the benefit of the traveling public and are only incidentally for the benefit of those who are engaged in business along its way. *Schmidt*, 867 S.W.3d at 773 (citing *State Highway Comm'n v. Humphreys*, 58 S.W.2d 144, 145 (Tex. Civ. App.—San Antonio 1933, writ ref'd)). Businesses along highways assume the risk that new roads may be built that will largely divert the traveling public from their business. *Id.* Thus, a property owner cannot recover for damages when traffic is merely required to travel a more circuitous route to reach the property in question. *Momin Props.*, 409 S.W.3d at 7.

**ANALYSIS**

Taking FamFive's allegations as true and viewing the jurisdictional evidence in its favor, FamFive has failed to establish a material and substantial impairment of access to its property. Access is impaired when direct ingress and egress to a property has been limited in some form. *See id.* at 8 ("[I]f the property retains reasonable access to the public road system, even if one abutting road is entirely closed, a material and substantial impairment of access has not occurred because the property retains some reasonable access to the public streets." (internal quotation marks omitted)). FamFive has not pleaded and the record evidence does not reflect that the construction project limited direct access to Bernard's in any way. Rather, the allegations and evidence reflect that the construction project caused a rather substantial diversion of traffic or circuity of travel for customers to reach Bernard's.[2] However, damages caused by diversion of traffic or

---

[2] At the hearing on TxDOT's plea to the jurisdiction, FamFive's only evidence relating to how the construction project materially and substantially impaired access to Bernard's identified the additional distance patrons were required to travel after the project began and the effect of this diversion of traffic on Bernard's profits. FamFive neither pleaded nor proved that direct access (ingress/egress) to Bernard's was impaired by the construction project.

6

circuity of travel are not compensable damages in a claim of inverse condemnation against a state agency. TEX. PROP. CODE ANN. § 21.042(d); *Petropoulos*, 346 S.W.3d at 532; *Dawmar Partners, Ltd.*, 267 S.W.3d at 880; *TPLP Office Park Props.*, 218 S.W.3d at 66–67; *Schmidt*, 867 S.W.2d at 774; *Momin Props.*, 409 S.W.3d at 7; *Bass*, 34 S.W.3d at 6. Because FamFive has not alleged or established that access to Bernard's was restricted by the construction project and diversion of traffic or circuity of travel is not compensable through an inverse condemnation suit, we conclude that the trial court erred as a matter of law in denying TxDOT's plea to the jurisdiction. We sustain TxDOT's sole issue.

FamFive highlights a record discussion between the trial court and the parties in which the trial court asks if there is a point at which a more circuitous route could amount to a material and substantial impairment of access. Case law provides that roadways may be altered in a manner that will nearly completely divert traffic away from a business yet, provided reasonable access to the property remains, no compensable taking has occurred. *Petropoulos*, 346 S.W.3d at 532; *Momin Props.*, 409 S.W.3d at 7; *Du Puy*, 396 S.W.2d at 109; *State v. Bhalesha*, 273 S.W.3d 694, 698–99 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Holbrook v. State*, 355 S.W.2d 235, 238 (Tex. App.—Eastland 1962, writ ref'd n.r.e.); *Pennysavers Oil Co. v. State*, 334 S.W.2d 546, 548 (Tex. App.—San Antonio 1960, writ ref'd); *see Tex. Dep't of Transp. v. C-5 Holdings, LLC*, No. 04-21-00292-CV, 2023 Tex. App. LEXIS 7909, at * 12–13 (Tex. App.—San Antonio Oct. 18, 2023, no pet.) (mem. op.) (where plaintiff had continual access to the property, no taking occurs even though construction made access "significantly less convenient and much longer than the [previously available] direct route"). Businesses along highways assume

7

the risk that new roads may be built that will largely divert the traveling public from their business. *Schmidt*, 867 S.W.3d at 773.

## CONCLUSION

Having determined that the trial court erred as a matter of law in denying TxDOT's plea to the jurisdiction, we reverse the trial court's order denying TxDOT's plea to the jurisdiction and dismiss FamFive's inverse condemnation claim for want of jurisdiction. *See* TEX. R. APP. P. 43.2(f).

Judy C. Parker
Justice